Lester KARDON et al., Plaintiffs,

v.

Clifford E. HALL, Secretary of the Department of Highways and Transportation of the State of Delaware, et al., Defendants.

Civ. A. No. 74–199.

United States District Court,
D. Delaware.

Dec. 19, 1975.

Thomas Herlihy, Jr., Morris Cohen, Wilmington, Del., and Melvin Alan Bank, Philadelphia, Pa., of counsel, for plaintiffs.

Johanna D. Drooz Yoffie, Deputy Atty. Gen., Wilmington, Del., for defendants, Hall, Haber and Bewick, Jr.

Joseph M. Bernstein, New Castle County Law Dept., Wilmington, Del., for defendant, Kauffmann.

## OPINION

LATCHUM, Chief Judge.

On October 4, 1974 Lester Kardon, Robert Kardon and Helen Kardon Moss, as individuals and trading as co-partners of Ate-Kays Company, filed suit in this court against Clifford E. Hall, Secretary of the Department of Highways and Transportation of the State of Delaware ("DHT"); Richard A. Haber, Director of Highways, DHT; Richard D. Bewick, Jr., Assistant Chief Engineer, DHT; and Samuel Kauffmann, Director of the Department of Development and Licensing of New Castle County, Delaware. The plaintiffs have demanded $2 million in damages because of the defendants' alleged *de facto* condemnation of plaintiffs' land located in Delaware in violation of plaintiffs' rights under the Fourteenth Amendment and under Article I, § 8 of the Delaware Constitution.[1]

Defendant Kauffmann has answered the complaint, disclaiming any responsi-

---

1. Del.Const., Art. I, § 8 provides:

   "nor shall any man's property be taken or applied to public use without the consent of his representatives, and without compensation being made."

bility. (Docket Item 3). After the plaintiffs stipulated that defendants Hall, Haber and Bewick "are being sued in their official capacity and not individually," (Docket Item 5), these defendants filed a motion to dismiss the suit against them for lack of subject matter jurisdiction, asserting immunity from suit in federal court on the basis of the Eleventh Amendment.[2]

From the complaint the following facts emerge. Plaintiffs own approximately 170 acres of land in Newark, Delaware known as Hidden Valley, on which they intend to build a housing development. In August 1973 all of the defendants and plaintiffs reached an agreement that the right-of-way for a portion of a proposed "Newark Ring Road" was to be located along the eastern edge of Hidden Valley. Subsequently, the defendants delegated to a private group known as the "Newark Roads Study Committee" the task of determining the location of the entire right-of-way of the proposed "Newark Ring Road." That group, apparently disregarding the prior agreement reached between the defendants and the plaintiffs, recommended that the "Newark Ring Road" right-of-way traversing Hidden Valley pass through the center of the tract rather than along its eastern edge. The right-of-way recommended by the "Newark Roads Study Committee" was then officially published in a "Future Right of Way Map—Tentative," a step the DHT defendants took in accordance with 17 Del.C. § 145 (rev. 1974) [formerly 17 Del.C. § 147], the statutory provision outlining the process by which the right-of-way for certain types of roads is established. The DHT's publication of this tentative right-of-way for a "Newark Ring Road" slicing through Hidden Valley has allegedly destroyed completely the market value of the entire tract of land, but the plaintiffs are unable to force the DHT to acquire Hidden Valley

through condemnation proceedings "pursuant to" 17 Del.C. § 145 (rev. 1974) because DHT has not published a "Future Right of Way Map—Final." The DHT defendants contend that a "Newark Ring Road" may never be built, and that if it is ever built, it may not pass through Hidden Valley in the location currently indicated on the "Future Right of Way Map—Tentative." On the other hand, the plaintiffs argue that the DHT's publication of the aforesaid map and its failure to amend it thereafter to conform with the August 1973 "agreement" amounts to a *de facto* condemnation of all of the land known as Hidden Valley for which plaintiffs are entitled to receive just compensation.

In the alternative, plaintiffs maintain that since a "Future Right of Way Map—Tentative" has already been officially published, the DHT is very likely to condemn that portion of Hidden Valley located within a proposed "Newark Ring Road" right-of-way, in order to forestall a proper fulfillment of their statutory obligations under 17 Del.C. § 145 and that this threat of imminent condemnation of a portion of Hidden Valley has destroyed the value of the entire tract.

The Court's ruling on the motion tendered by defendants Hall, Haber and Bewick will be determined by its answers to the following questions: (1) if the State of Delaware were a defendant to this suit, could it assert Eleventh Amendment immunity, (2) if so, does its absence as a named defendant preclude defendants Hall, Haber and Bewick from also asserting Eleventh Amendment immunity and (3) has there been a waiver of Eleventh Amendment immunity? *Edelman v. Jordan,* 415 U.S. 651, 662–663, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Gordenstein v. University of Delaware,* 381 F.Supp. 718, 720–721 (D.Del. 1974); *S. J. Groves & Sons Co. v. New Jersey Turnpike Authority,* 268 F.Supp. 568, 570–571 (D.N.J.1967).

---

**2.** Hall, Haber and Bewick first filed a motion to dismiss claiming immunity from suit in federal court based upon both Article I, Section 9 of the Delaware Constitution and the Eleventh

Amendment. (Docket Item 6). This motion was later amended (Docket Item 8) to delete the ground for dismissal based upon the Delaware Constitution.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Adopted in response to the decision of the Supreme Court in *Chisholm v. Georgia,* 2 Dall. 419, 1 L.Ed. 440 (1793) which held that a state is amenable to suit in the federal courts by a citizen of another state to recover damages for the state's refusal to recognize the obligation to pay on its own bonds, the Eleventh Amendment embodies the broad postulate that "[the] States of the Union, still possessing attributes of sovereignty, shall be immune from suits [in the federal courts] without their consent." *Monaco v. Mississippi,* 292 U.S. 313, 322–323, 54 S.Ct. 745, 748, 78 L.Ed. 1282 (1934). And today it is well established that because of the Eleventh Amendment a federal district court lacks subject matter jurisdiction over a complaint seeking damages from a state due to the state's alleged violation of the United States Constitution, the state constitution or statute, or the common law. *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 460–461, 470, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Kennecott Copper Corp. v. State Tax Commission of Utah,* 327 U.S. 573, 576, 66 S.Ct. 745, 90 L.Ed. 862 (1946). Likewise, a federal district court lacks subject matter jurisdiction by reason of the Eleventh Amendment whenever a state is the "real, substantial party in interest" defending a suit, although not a named defendant, and the law is clear that a state is the real, substantial party in interest if any damages awarded to the plaintiffs will be paid from the state treasury. *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347 (1945); *Edelman, supra,* 415 U.S. at 663–665, 94 S.Ct. 1347. The determination of whether a state is the "real, substantial party in interest" is an issue governed by federal law, although in this regard state statutes and case law are of great significance in pinpointing the source of funds which will be used to satisfy any judgment awarded by a court against the named defendant or defendants. *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247, 250–251 (C.A.3, 1969); *Gordenstein v. University of Delaware,* 381 F.Supp. 718, 720 (D.Del.1974).

Based on a careful examination of applicable Delaware statutes, the Court concludes that the State of Delaware is the "real, substantial party in interest" defending this action. The DHT, which defendant Hall heads, is established pursuant to 29 Del.C. § 8401 (rev. 1974); the Division of Highways is a subdivision of the DHT (29 Del.C. § 8406(1) (rev. 1974)) and is headed by defendant Haber, whose office, Director of Highways, is authorized by 29 Del.C. § 8404(2)(a) (rev. 1974). Defendant Bewick is employed directly by the DHT pursuant to 17 Del.C. § 111(b) (rev. 1974). Here the plaintiffs seek to recover against these three defendants jointly and severally in their *official* capacities, which means that the funds of the DHT or the Division of Highways rather than the personal assets of these defendants are sought to satisfy any judgment awarded to the plaintiffs. The bulk of the DHT's funding comes directly from legislative appropriations because under 29 Del.C. § 8416 (rev. 1974) "the . . . [DHT] shall be operated within the limitation of the annual appropriation and any other funds appropriated by the General Assembly. Special funds may be used in accordance with approved programs, grants and appropriations." It is true that some of the DHT's funding is derived from the public at large through the sale of bonds or levying of tolls, but monies so raised are strictly segregated for use only in connection with the Delaware Turnpike (17 Del.C. §§ 601–622 (rev. 1974)), which is administered by the Turnpike Division of the DHT. See 17 Del.C. §§ 605, 610, 613 (rev. 1974). Since Hidden Valley does not lie within the boundary of the Delaware Turnpike

lands or of other facilities even arguably under the control of the Delaware Turnpike Division, a judgment awarded by this Court would come from the general funds of the DHT and the Division of Highways.

The sum and substance of the above described statutory system for the funding of the DHT and the Division of Highways is that a monetary judgment awarded against defendants Hall, Haber and Bewick, jointly and severally in their official capacities, will drain monies from the state treasury. Consequently the State of Delaware is the "substantial, real party in interest" defending this suit and the Court lacks subject matter jurisdiction unless Delaware has previously waived its Eleventh Amendment protection.

Waiver of Eleventh Amendment immunity is not lightly implied, but must be stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974), citing *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 53 S.Ct. 742 (1909); *Daye v. Commonwealth of Pennsylvania*, 483 F.2d 294, 298 (C.A.3, 1973). In particular, a state's consent to suit against it in the state courts by waiving "sovereign immunity" will not suffice to waive its Eleventh Amendment immunity against suit in a federal court. See *Petty v. Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 276–277, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Knight v. State of New York*, 443 F.2d 415, 419 (C.A.2, 1971).

The plaintiffs advance a three-pronged argument in an attempt to establish that the State of Delaware has waived its Eleventh Amendment immunity to the instant suit.

First, relying upon *Tamulion v. Michigan State Waterways Comm'n*, 50 Mich. App. 60, 212 N.W.2d 828 (1973), plaintiffs contend that Delaware has waived its Eleventh Amendment immunity when her officials acting on her behalf have taken steps which amount to a *de facto* condemnation. It is true that DHT could not successfully interpose the defense of "sovereign immunity" to bar a suit by the plaintiffs brought in the Delaware state courts seeking damages for an alleged *de facto* taking of their property because Art. I, § 8 of the Delaware Constitution which prohibits the taking of private property for public use without just compensation has been held to operate as a self-executing waiver of the state's sovereign immunity otherwise recognized by Art. I, § 9 of the Delaware Constitution. *State ex rel. Smith v. O.24148 Acres*, Del., 3 Storey 439, 171 A.2d 228, 231 (Supr.Ct.1961). Nevertheless, such a self-executing waiver of sovereign immunity, based as it is upon a state constitutional provision providing in *general* terms for the payment of just compensation for property taken by the state for public use, does not constitute a clear and unequivocal declaration of the state's consent to be sued in a federal court. *Southern Railway Co. v. South Carolina Highway Dept.*, 246 F.Supp. 435, 438–439 (E.D.S.C.1965).

Second, the plaintiffs claim that 18 Del.C. § 6511 (rev. 1974) establishes an express waiver of the state's Eleventh Amendment immunity to a suit brought in federal court to recover damages for a *de facto* condemnation. That statutory provision reads:

"The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether the same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate."

This argument contains two fallacies. In the first place the express waiver contained in the above statute relates solely to "sovereign immunity," that is, the state has consented to be sued in its own

state courts when there is a commercial or self-insurance program in effect to protect the state from a particular wrongful act. *Pipkin v. Department of Highways & Transportation,* 316 A.2d 236, 239 (Del.Super.Ct.1974). But a statute consenting to suit against the state in the state courts should not be read to embrace consent of the state to suit in a federal court. Only a "clear indication" of the state's intention to submit to suit in federal courts will surmount the Eleventh Amendment's bar. *Chandler v. Dix,* 194 U.S. 590, 591–592, 24 S.Ct. 766, 48 L.Ed. 1129 (1904); *Great Northern Life Ins. Co. v. Read, supra,* 322 U.S. at 64, 64 S.Ct. 873; *Ford Motor Co. v. Department of Treasury of Indiana, supra,* 323 U.S. at 465–466, 65 S.Ct. 347; *Kennecott Copper Corp. v. State Tax Comm., supra,* 327 U.S. at 577, 66 S.Ct. 745; *Knight v. State of New York, supra* at 419. There is no such clear indication in 18 Del.C. § 6511.

In the second place, assuming *arguendo* that 18 Del.C. § 6511 (rev. 1974) amounted to consent by the state to suit in a federal court, it is clear on the present record that the conditions for giving such consent are not present here. There is an uncontradicted affidavit of the Director of the State Insurance Coverage Office [3] before this Court to the effect that the State of Delaware does not carry any type of insurance covering damages recoverable in a *de facto* condemnation suit. Since there is no insurance of any type covering the risk and loss involved in this case, it is clear that the state has not consented to suit against it either in the state or federal courts based on the provisions of 18 Del.C. § 6511 (rev. 1974). See *Pajewski v. Perry,* 320 A.2d 763, 766 (Del.Super. 1974).

■ Plaintiffs' final argument is that 17 Del.C. § 145(k) amounts to an express consent of the state to suit in a federal court. That statute provides:

"The adoption of the ['Future Right-of-Way Map—Final'] and the inclusion and location thereon of any future highway right-of-way route or lines shall not, in and of itself, constitute and be deemed to constitute the establishment of any highway and acceptance of any land for highway purposes and shall not constitute the taking or application for public use. However, to the extent lands so designated [upon the 'Future Right-of-Way Map —Final'] may be judicially determined to be taken or applied to public use under the Delaware Constitution, article I, § 8, the [DHT] may, in the exercise of its power of eminent domain, acquire the same by condemnation and in the manner prescribed in Chapter 61, Title 10, if the [DHT] cannot reach agreement with the owner as to the value thereof."

The provisions of § 145(k) cannot be construed to waive DHT's Eleventh Amendment immunity under the facts of the present case because it is clear from the allegations of the complaint that the defendants have not published a "Future Right-of-Way Map—Final" indicating that the "Newark Ring Road" will pass through Hidden Valley, which is the essential fact triggering the operative effect of the above quoted provisions.

The Court having found that the State of Delaware has not waived its Eleventh Amendment immunity to this suit in this court, the motions of defendants Hall, Haber and Bewick to dismiss will be granted.

■ The defendant Kauffmann, Director of the Department of Development and Licensing of New Castle County, in his answer to the complaint disclaimed any responsibility for the enforcement of the statute set forth in the complaint. The Court treats this disclaimer as an inartfully drawn motion to dismiss under Rule 12(b)(6), F.R.Civ.P., for failure to state a claim against him upon which relief may be granted.

3. Affidavit of Arnold R. Olsen, Director of Insurance Coverage, the State Insurance Coverage Office. This affidavit is attached to Dock-

et Item 11. (Reply brief of defendants Haber, Hall and Bewick).

## 10

  Viewing the complaint's allegations most liberally, a close analysis shows to a certainty that the plaintiffs are entitled to no relief against Kauffmann under any state of facts which could be proved in support of the claim as alleged. This is so for the following reasons. First, the introductory unnumbered paragraph on page one of the complaint simply identifies Samuel Kauffmann as Director of the Department of Development and Licensing of New Castle County, Delaware and as a resident and citizen of the state. Paragraph 2 alleges that "defendants," including Kauffmann, "are responsible for the enforcement of the Delaware state statute hereinafter set forth." Paragraph 4 then points to the statute referred to in paragraph 2 as current 17 Del.C. § 145 (rev. 1974) [formerly 17 Del.C. § 147] a copy of which is attached to the complaint as "Ex. A." However, a study of the statute in question shows that Kauffmann, neither as an individual nor as a county officer, was in any way connected with the enforcement of that statute or was to play any part in the procedures therein provided. Consequently § 145 affords no basis for a valid legal claim against Kauffmann. Secondly, only when the State Highway, State Planning and local governing officials by following the procedures of § 145 have developed a "Future Right-of-Way Map —Final," would Kauffmann, as Director of the New Castle County Planning and Licensing Department, under the provisions of 9 Del.C. § 3005(c) and (d) ever become involved. However, the complaint expressly alleges in paragraph 10 that no such final map for a corridor route has ever been established. In addition, there is no allegation in the complaint that plaintiffs ever applied for a building permit from the county much less that such a permit was denied by Kauffmann. Accordingly, construing the allegations of the complaint most liberally in plaintiffs' favor, the Court finds that the allegations fail to state a valid claim against defendant Kauffmann upon which relief can be granted and the complaint with respect to him also will be dismissed.

An order will be entered in accordance with this opinion.