571 F.2d 158
 Kermit WEST, Appellant,
v.
Paul W. KEVE, in his capacity as Director of the Division of
Adult Corrections of the State of Delaware and
Raymond Anderson, in his capacity as
Superintendent of Delaware
Correctional Center.
 No. 76-2397.
 United States Court of Appeals, Third Circuit.
 Submitted under Local Rule 12(6) Nov. 28, 1977.
 Decided Feb. 15, 1978.
 
 William C. Anderson, Community Legal Aid Society, Inc., Wilmington, Del., for appellant.
 Keith A. Trostle, Deputy Atty. Gen., Wilmington, Del., for appellees.
 Before GIBBONS and VAN DUSEN, Circuit Judges, and FISHER, District Judge.*
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 This appeal concerns an alleged violation of a state prisoner's Eighth Amendment right against cruel and unusual punishment by withholding adequate medical care from him.
 
 
 2
 Plaintiff is a state prisoner serving a life sentence in the Delaware Correctional Center. Medical examinations of the plaintiff in August and October 1974 disclosed that he was suffering from chronic venous stasis and severe varicose veins in the lower right leg, a periosteal thickening, and localized irregular periosteal thickening of the right medial malleolus (ankle joint). Surgery was recommended to correct this condition. Plaintiff requested such surgery, but it was not available at the prison hospital and the defendants[1] allegedly refused to permit him to obtain the treatment at a private hospital. On February 6, 1976, plaintiff filed a suit pursuant to 42 U.S.C. § 1983,[2] alleging that defendants, acting under color of state law, had violated his Eighth Amendment rights by inflicting cruel and unusual punishment in denying him medical treatment.[3] The suit sought damages and an order compelling the defendants to provide or cause to be provided the recommended medical treatment. In their answer to the complaint, defendants included affirmative defenses and concluded with this language: " . . . defendants having fully answered the complaint demand that it be dismissed with costs on the plaintiff" (A13). On March 11, 1976, approximately 17 months after it was recommended, surgery was performed.
 
 
 3
 The district court sua sponte sought memoranda on whether the claim for injunctive relief was moot and whether the claim for damages was barred by the Eleventh Amendment. The court then dismissed the complaint insofar as plaintiff sought an order compelling medical treatment on the ground that the March 11 operation rendered this issue moot. The plaintiff contended that the case was still viable because post-operative treatment was required, but the court rejected this contention on the ground that it was a claim based on a hypothetical or abstract injury which may or may not occur and thus did not state a "case or controversy" as required by Article III of the United States Constitution. Plaintiff also contended that he had a claim for money damages against the defendants for delaying the operation for 17 months. The district court dismissed the complaint insofar as it sought damages on the ground that the Eleventh Amendment bars an award of damages against state officials sued in their official capacities.
 
 
 4
 In reviewing the dismissal of the complaint, we construe the allegations in the complaint favorably to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 234, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). We hold that dismissal of the complaint was improper at this stage of the litigation and reverse the judgment and remand the case for further proceedings.[4]
 
 
 5
 A state is under a duty to provide adequate medical care to those it is punishing by incarceration, and, although the constitutional standard for adequate medical treatment has not been fully developed, Neisser, Is There A Doctor In The Joint? The Search For Constitutional Standards For Prison Health Care, 63 Va.L.Rev. 921, 950 (1977), the Supreme Court has stated that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious. The complaint clearly alleges facts meeting the deliberate indifference test. As to the seriousness of the need for medical treatment, the complaint alleges that the plaintiff was suffering great pain before the operation, and documents provided pursuant to a request by the district court alleged that the plaintiff continued to suffer pain after the operation and that problems had developed because of two hard knots in his leg (docket entry 9, exhibit B, reproduced at A18-19). We need not make a judgment about the seriousness of the medical needs here since this will be for the determination of the district court on remand, and the district court will have expert medical testimony available if necessary.4a
 
 
 6
 The complaint alleges that the defendants denied the plaintiff recommended medical treatment and prays that the court compel defendants to allow the plaintiff to undergo the operation and "order defendants to provide such medical treatment as may be necessary to preserve the health and well being of the plaintiff . . . ." (A3). Therefore, the complaint avers that the plaintiff has been denied medical treatment generally and, although the denial of the operation was the primary concern, the complaint, as supplemented by documents requested by the district court (docket entry 7, Civ. No. 76-61) and supplied pursuant to such request by plaintiff's counsel (docket entry 9, exhibit B, reproduced at A18-19), alleges a denial of post-operative treatment. The record establishes that the operation has been performed, but it does not establish that the plaintiff is being provided with adequate post-operative treatment. The plaintiff claims that he is being denied proper post-operative care, that he is having pain in his leg, that he has not been allowed to see the doctor who performed the operation, and that he has not been given medication for the pain. Id. Deliberate indifference to serious medical needs, resulting in either a denial of recommended post-operative treatment or a denial of access to a physician capable of evaluating the need for post-operative treatment, violates the constitutional standard enunciated in Estelle. See also Neisser, Va.L.Rev., supra at 950-973. Although the plaintiff has been provided with aspirin, this may not constitute adequate medical care. If "deliberate indifference caused an easier and less efficacious treatment" to be provided, the defendants have violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care. Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974). See Estelle, supra, 429 U.S. at 104, 97 S.Ct. 285.[5]
 
 
 7
 We conclude that whether plaintiff is being denied adequate post-operative care due to deliberate indifference to his serious medical needs as alleged is a material issue of fact which must be resolved on remand.[6] Insofar as plaintiff seeks injunctive relief, the case is not moot and there is a "case or controversy." Therefore, the claim for injunctive relief was improperly dismissed.
 
 
 8
 Although, absent waiver, the Eleventh Amendment bars damage suits against a state or against state officials in their official capacities when damages will have to be paid with state funds, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Sarteschi v. Burlein, 508 F.2d 110 (3d Cir. 1975); Rochester v. White, 503 F.2d 263 (3d Cir. 1974),[7] it does not bar a damage suit against state officials in their individual capacities. Scheuer, supra; Sarteschi, supra; Rochester, supra at 263 n.12a. In Sarteschi, supra at 113, we stated:
 
 
 9
 "The Supreme Court has accommodated both the Eleventh Amendment and the civil rights provisions, such as 42 U.S.C. § 1983, by prohibiting suits which seek to collect money judgments from the state treasury, while allowing suits which . . . seek personal money judgments against state officials as damages for unconstitutional deprivations. . . .
 
 
 10
 "The fact that the allegedly unconstitutional acts of the defendants were done in the defendants' official capacities, and that the relief sought would require official action on the part of those defendants who are still members or employees of the Commission, does not affect the district court's jurisdiction."
 
 
 11
 (Footnote omitted.)
 
 
 12
 If the complaint in this case is read narrowly and technically, it can be concluded that the defendants were being sued only in their official capacities. However, the complaint states facts constituting a damage claim against the defendants in their individual capacities. We must construe the complaint favorably to the plaintiff, Scheuer, supra, 416 U.S. at 234, 94 S.Ct. 1683, and "as to do substantial justice." F.R.Civ.P. 8(f). Accordingly, we hold that the complaint, as supplemented by docket entry 9, supra, states a claim for damages against the defendants in their individual capacities. If the plaintiff proves that the defendants either delayed the operation or withheld adequate post-operative treatment or evaluation due to their "deliberate indifference to (his) serious medical needs," Estelle, supra, 429 U.S. at 104, 97 S.Ct. at 291, the defendants will be liable for damages for violating his Eighth Amendment rights. Therefore, the damage claim was improperly dismissed.
 
 
 13
 The damage claim was also improperly dismissed insofar as it sought damages against the defendants in their official capacities, or, in effect, damages against the state. A state may waive its Eleventh Amendment immunity, Edelman, supra, 415 U.S. at 673, 94 S.Ct. 1347, and plaintiff contends that Delaware has done so by enactment of Del.Code tit. 18, § 6511 (1974), which provides:
 
 
 14
 " § 6511. Defense of sovereignty prohibited.
 
 
 15
 "The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate."
 
 
 16
 In Kardon v. Hall, 406 F.Supp. 4 (D.Del.1975), the only case discussing whether § 6511 constitutes a waiver of the Eleventh Amendment, the court held that this statute waives only sovereign immunity against suit in state court but not Eleventh Amendment immunity against suit in federal court. Although the Delaware statutory scheme does not specify the procedure to be used in suing the state nor provide that the state courts have exclusive jurisdiction in such suits, the court in Kardon reached its conclusion by interpreting the statute narrowly in reliance on Edelman's statement that waiver will be found "only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' " Edelman, supra, 415 U.S. at 673, 94 S.Ct. at 1361, quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909). In neither Kardon nor Edelman, however, had the state procured insurance to cover the loss. The rationale for construing a waiver narrowly is to protect the state treasury,[8] and when a state is insured against the loss from a claim, that rationale is attenuated. Therefore, although a state's insurance coverage does not necessarily imply a waiver of the Eleventh Amendment, the reasoning of Kardon may be inapposite in this case. The record does not disclose whether or not Delaware is insured against loss from the type of claim made here. Therefore, we decline to decide whether Delaware has waived its Eleventh Amendment immunity, and we remand the case to the district court to determine if this type of loss is insured and, if so, whether Eleventh Amendment immunity has been waived.
 
 
 17
 The Supreme Court of Delaware has held that since Del.Code tit. 18, § 6502 (1974) directs the Delaware Insurance Coverage Determination Committee to insure any type of risk to which the state may be exposed, sovereign immunity is presumptively waived and the burden is on the state to prove that there is no coverage and to explain why there is no coverage. Pajewski v. Perry, 363 A.2d 429, 436 (Del.1976). Therefore, on remand to determine whether there is insurance coverage, it will be presumed for purposes of Delaware law that there is coverage and the defendants will have the burden of proving there is not.
 
 
 18
 The judgment of the district court will be reversed and the case remanded for action consistent with this opinion.
 
 
 
 *
 Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 Defendant Paul W. Keve's correct title, according to defendants' Answer, P 3, is Acting Commissioner of Corrections. The district court stated that he was the Director of the Division of Adult Corrections of the State of Delaware. Defendant Raymond Anderson is Superintendent of the Delaware Correctional Center
 
 
 [2]
 42 U.S.C. § 1983 provides:
 "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [3]
 The Eighth Amendment's prohibition of cruel and unusual punishment applies to the states pursuant to the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)
 
 
 [4]
 We must decide this appeal without benefit of a brief for defendants. Defendants' brief was due on January 14, 1977. As of that date, defendants had neither filed a brief nor a motion to extend time for filing. On March 14, 1977, April 6, 1977, and May 2, 1977, counsel for plaintiff wrote to counsel for defendants, requesting him either to file a brief or to advise the court that no brief would be filed. Counsel for the defendants did not answer the March and April letters, but on May 5, 1977, answered the May letter, stating that a brief would be filed by May 15, 1977. No brief was filed. On June 2, 1977, counsel for plaintiff wrote counsel for defendants, advising him that unless he filed a brief by June 10, 1977, counsel for plaintiff would request the court to decide the appeal on the basis of plaintiff's brief. This letter was never answered. On June 16, 1977, plaintiff submitted Appellant's Motion To Deem Appellees' Brief Waived and For Decision on the Basis of Appellant's Brief. Counsel for defendants did not object to or respond to this motion. On June 29, 1977, the motion was granted
 4a The better practice in cases such as this, relying on "indifference to serious medical needs" (Estelle, supra at 104, 97 S.Ct. 285), is to be specific concerning the medical conditions involved. It is noted that this complaint, filed in December 1975, predated Estelle.
 
 
 [5]
 This case is distinguishable from our decision in Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970), which affirmed a dismissal of a complaint that the prisoner's Eighth Amendment rights had been violated due to inadequate medical care. In Gittlemacker the "appellants' claim amount(ed) to no more than an averment that the facilities at (the prison) are inferior to those at Philadelphia . . . ." Id. at 6. In contrast, here the complaint alleges a deliberate denial of recommended treatment
 
 
 [6]
 Since the district court dismissed the case by reading the complaint and record as claiming that plaintiff might not get adequate post-operative care, rather than reading them, as we do, as claiming that plaintiff was not getting such care, the court made no finding of fact that plaintiff was receiving adequate post-operative care. However, the court strongly implied that the plaintiff was receiving adequate treatment. West v. Keve, No. 76-61, slip op. at 4, n.3 (D.Del., Sept. 7, 1976), reproduced at A24. This view was based on a May 28, 1976, letter from the superintendent of the prison to plaintiff's counsel. Docket entry 9, exhibit A, reproduced at A17. However, in his letter of August 5, 1976, plaintiff claimed that he was not getting proper post-operative medical care. Docket entry 9, exhibit B, reproduced at A18-19. Plaintiff should have the opportunity to prove the claims in this letter at trial. To be entitled to relief for a violation of his Eighth Amendment rights, the plaintiff must prove that his medical needs were "serious." Estelle, supra, 429 U.S. at 104, 97 S.Ct. 285. This is an issue of fact that must be determined on remand. See Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976), where this court had before it a full trial record. The seriousness of the plaintiff's medical needs must be gauged in light of the fact that he is serving a life sentence and cannot be expected to delay medical treatment until his release from prison
 
 
 [7]
 The Eleventh Amendment provides:
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
 It has been interpreted to prohibit suits against a state by its own citizens. Edelman, supra, 415 U.S. at 662-63, 94 S.Ct. 1347.
 
 
 [8]
 For example, in Edelman the Court stated:
 "(T)he rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."
 Id. 415 U.S. at 663, 94 S.Ct. at 1356 (emphasis supplied).
 "The funds to satisfy the award in this case must inevitably come from the general revenues of the State of Illinois, . . ."
 Id. at 665, 94 S.Ct. at 1356 (emphasis supplied).