William SMITH, as Next Friend of and Guardian of Eric Smith, a minor, and William Smith, Gail Smith, William A. Smith, Colin R. Smith, Janet E. Smith, Jacqueline A. Smith, Individually, Plaintiffs,

v.

TOWN OF DEWEY BEACH, a municipality, and Director of Parks and Recreation of the State of Delaware, Defendants.

Verne WHALEN, as Next Friend of and Guardian of Kevin Whalen, a minor, and Verne Whalen, and Ruth Whalen, and Susan Aldrich, Individually, Plaintiffs,

v.

TOWN OF BETHANY BEACH, a municipality, and Director of Parks and Recreation, Defendants.

Civ. A. Nos. 86–393–JLL, 86–405–JLL.

United States District Court,
D. Delaware.

May 1, 1987.

Douglas A. Shachtman, Wilmington, Del., and Ronald R. Gilbert, Detroit, Mich., for plaintiffs.

Kevin P. Maloney, Deputy Atty. Gen. of the State of Del., Dover, Del., for defendant Director of Parks and Recreation.

Myron T. Steele of Prickett, Jones, Elliott, Kristol & Schnee, Dover, Del., for defendant Town of Dewey Beach.

Carl Schnee of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant Town of Bethany Beach.

LATCHUM, Senior District Judge.

## INTRODUCTION

Currently before the Court are motions by the defendant William J. Hopkins ("Hopkins"), Director of Parks and Recreation for the State of Delaware, to dismiss all claims against him in both of the above captioned actions. This Court has jurisdiction based on 28 U.S.C. § 1332 due to the complete diversity of the parties. The facts of both cases are virtually identical and the same attorneys represent the plaintiffs in each case. Therefore, the actions were consolidated for the purpose of arguing the present motions and this opinion applies to both cases. For the reasons set forth in this opinion, the Court will grant Hopkins' motion to dismiss.

## BACKGROUND

The facts of these cases are relatively straightforward. On the morning of August 26, 1984, plaintiff Eric Smith was swimming in the ocean off Dewey Beach, Delaware. During his swim, Eric attempted a dive which resulted in contact with the ocean floor. Eric fractured his neck and suffered a severe spinal cord injury as a result of this contact. Because of his injuries, Eric and his family have incurred numerous medical and hospital expenses. Additionally, Eric has allegedly sustained a loss of earning capacity, due to injuries which have left him a permanent quadraplegic. In a similar accident, the plaintiff Kevin Whalen was injured while attempting a dive in the ocean off of Bethany Beach, Delaware. Like Eric Smith, Kevin fractured his neck and is now a permanent quadraplegic.

William Smith brought this action as next friend and guardian of Eric Smith. William Smith and his wife, Gail Smith, along with their other children William A. Smith, Colin R. Smith, Jacqueline A. Smith, and Janet E. Smith all sued individually. Similarly, Verne Whalen brought suit on behalf of his son and he, his wife, Ruth Whalen, and daughter, Susan Aldrich, sued individually.[1] The suits were filed against the "Director of Parks and Recreation for

---

1. The plaintiffs' complaints allege that "each of the individual plaintiffs have suffered the loss of their son's or brother's services and consortium and that they are entitled to damages for this loss." (Docket Item ["D.I."] 1 at ¶ 16.) Although not raised in the parties' briefs, the Court notes that as a matter of Delaware law the above allegation probably does not state a claim upon which relief can be granted with respect to some or all of the plaintiffs. The parents of Eric Smith and Kevin Whalen have a cause of action recognized by statute for loss of wages or services, if such loss was wrongfully or negligently inflicted. 13 *Del.C.* § 704 (1981 Repl. Vol.). *See Mancino v. Webb*, 274 A.2d 711 (Del. Super.1971). The Court is unaware of any statute or case law which extends this cause of action to the brothers and sisters of an injured person.

Additionally, the Delaware Superior Court in a case of first impression in this State held that a parent cannot recover for loss of a child's consortium. *Beck v. Claymont School Dist.*, No. 782–1976, slip op. (Del.Super. July 25, 1983) (Walsh, J.). If parents are precluded from recovering for loss of a child's consortium, this Court cannot imagine that a Delaware state court would decide a sister or brother does have a cause of action for loss of consortium. The Delaware courts have yet to hold that recovery is possible for loss of consortium except between a husband and wife. As then Judge Walsh stated in *Beck*, any changes to this established rule should be made by the Legislature. *See Lacy v. G.D. Searle & Co.*, 484 A.2d 527, 532 (Del.Super. 1984) (damages for loss of consortium involve the many facets of the *marital* relationship).

the State of Delaware" and the "Commissioners of Dewey Beach" or the "Town of Bethany Beach." (D.I. 1, ¶¶ 6, 7.) [2]

The plaintiffs' complaints against Hopkins and Dewey Beach or Bethany Beach set forth three counts as the basis for recovery. First, the plaintiffs contend the accidents were "directly and proximately caused by the negligent acts and/or omissions of the Defendants." (*Id.* at ¶ 13.) The alleged omissions include failure to warn plaintiffs of the dangerous condition of the ocean, failure to have lifeguards supervising swimmers, failure to post adequate warning signs and failure to dredge the beach. The second count claims that the defendants had knowledge of the dangerous conditions and the ability to alleviate these conditions. The plaintiffs allege the defendants' failure to take any action under these circumstances constitutes gross negligence and willful and wanton misconduct. The final count claims that defendants' failure to dredge the beaches or to take other measures to ensure the beaches were at a safe level constitutes an intentional failure to act which resulted in an intentional defect and public nuisance.

After these suits were filed, Hopkins petitioned this Court for an appointment of counsel pursuant to 10 *Del. C.* § 3925 (1975).[3] The Court granted this motion and Deputy Attorney General Kevin P. Maloney filed the present motions on Hawkins' behalf in lieu of an answer to the complaints. Fed. R.Civ.P. 12(b).

The disposition of the motions to dismiss is complicated by the fact that the plaintiffs' complaints do not clearly indicate whether Hopkins is being sued just in his official capacity as Director of Parks and Recreation or in both his official capacity and individually. To facilitate the efficient resolution of the motions to dismiss, this opinion addresses both possibilities.

ANALYSIS

In the Opening Brief in Support of the Motion to Dismiss, Hopkins asserts that the claims against him should be dismissed for either one of two reasons. First, he contends the Eleventh Amendment bars this Court from exercising subject matter jurisdiction over the plaintiffs' suits. Alternatively, Hopkins argues that the plaintiffs have failed to state a claim upon which relief can be granted because (1) the doctrine of official immunity precludes recovery, (2) he did not have any duty to protect the plaintiffs from injury, or (3) Eric Smith and Kevin Whalen assumed the risk of injury. Hopkins' two grounds for dismissal will be discussed in order.

A. *Official Capacity*

■ The Eleventh Amendment of the United States Constitution provides in its entirety:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

This Amendment confers immunity upon a state when sued in a federal court and normally bars a federal district court from asserting subject matter jurisdiction over a

---

**2.** Because the filings in the two cases are virtually identical, except for the names of the parties, docket number citations apply to both cases unless noted otherwise.

**3.** 10 *Del. C.* § 3925 states:

Any public officer or employee, in a criminal or civil action against him arising from his state employment, shall be entitled to petition the court for a court appointed attorney to represent his interests in the matter. If the judge, after consideration of the petition, examination of the petitioner and receipt of such further evidence as he may require, determines that the petition has merit, he shall appoint an attorney to represent the interests of such public officer or employee. The court-appointed attorney shall represent such person at all stages, trial and appellate, until the final determination of the matter, unless the attorney is earlier released by such person or by the court. The court may first appoint an attorney from the Department of Justice. If the court determines that the Department is unable to represent such public officer or employee, the court may appoint an attorney from the Office of the Public Defender in criminal actions only, and in civil actions may appoint an attorney licensed in this State. This section shall also apply to all federal courts within this State.

suit seeking damages from a state, unless the state has waived its immunity to suit in a federal court. *Kardon v. Hall,* 406 F.Supp. 4, 7 (D.Del.1975), *citing Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 576, 66 S.Ct. 745, 746, 90 L.Ed. 862 (1946); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 460–61, 470, 65 S.Ct. 347, 353, 89 L.Ed. 389 (1945).

This Court in *Kardon* discussed the background of the Eleventh Amendment and analyzed the law relevant to deciding a motion such as the one presently before the Court. *Kardon* involved a suit brought by landowners against officials of the Delaware Department of Highways and Transportation. All the defendants were sued in their official capacities. The defendants moved to dismiss the suit against them for lack of subject matter jurisdiction in federal court on the basis of the Eleventh Amendment. Their motion was granted.

This Court answered three questions in order to decide the *Kardon* motion. The same questions apply to Hopkins' motions to the extent he is being sued in his official capacity. These questions are: "(1) if the State of Delaware were a defendant to this suit, could it assert Eleventh Amendment immunity, (2) if so, does its absence as a named defendant preclude [Hopkins] from also asserting Eleventh Amendment immunity, and (3) has there been a waiver of Eleventh Amendment immunity?". 406 F.Supp. at 6, *citing Edelman v. Jordan,* 415 U.S. 651, 662–63, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974); *Gordenstein v. University of Delaware,* 381 F.Supp. 718, 720–21 (D.Del.1974); *S.J. Groves & Sons Co. v. New Jersey Turnpike Auth.,* 268 F.Supp. 568, 570–71 (D.N.J.1967).

The answer to the first *Kardon* question is clearly in the affirmative. If the State of Delaware had been named as a defendant in these suits, it could assert Eleventh Amendment immunity. The actions would definitely be "commenced or prosecuted against one of the United States by Citizens of another State."

The second *Kardon* question can easily be answered in the negative. The

absence of the State of Delaware as a named defendant does not preclude Hopkins from asserting Eleventh Amendment immunity. As discussed in *Kardon,* the Eleventh Amendment precludes jurisdiction in a federal district court whenever a state is the "real, substantial party in interest" defending an action, even though it is not a named defendant. 406 F.Supp. at 7. *See also Holman v. Walls,* 648 F.Supp. 947, 953–54 (D.Del.1986) (suits against government officials in their official capacity generally are another way of pleading an action against the governmental entity; therefore, they should be dismissed because of the Eleventh Amendment). A state is the real, substantial party in interest if any damages awarded to the plaintiffs will be paid from the state treasury. *Id., citing Ford Motor Co.,* 323 U.S. at 464, 65 S.Ct. at 350; *Edelman,* 415 U.S. at 663–65, 94 S.Ct. at 1357. Therefore, if the State of Delaware is a real, substantial party in interest, then Hopkins can assert the Eleventh Amendment grounds for immunity which the State would have if it were a named defendant. The determination of whether Delaware is the real, substantial party in interest is a question governed by federal law, but in this case state statutes are critical in identifying the source of funds which will be used to satisfy a judgment awarded to the plaintiff. *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247, 250–51 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970); *Gordenstein,* 381 F.Supp. at 720.

This Court's review of the applicable Delaware statutes leads to the conclusion that the State of Delaware is the "real, substantial party in interest" defending against any part of these suits brought against Hopkins in his official capacity. The Division of Parks and Recreation which Hopkins heads was established by 29 *Del. C.* § 8008 (1983 Repl. Vol.) and is a division of the Delaware Department of Natural Resources and Environmental Control ("DNREC"). The Secretary of DNREC, Hopkins, and other division directors, cooperate in preparing a proposed operations budget for DNREC.

This budget is reviewed by the Governor and approved by the General Assembly. The vast majority of DNREC funds come directly from the State of Delaware. As provided by statute, "the [DNREC] shall be operated within the limitations of the annual appropriation and any other funds appropriated by the General Assembly." 29 *Del.C.* § 8024. This statutory funding system means that any judgment against Hopkins in his official capacity would be payable by the Division of Parks and Recreation which is funded by the State through the DNREC. This means the State of Delaware is the real, substantial party in interest and Hopkins can assert Eleventh Amendment immunity against this suit in federal district court, unless Delaware has waived its Eleventh Amendment immunity. Whether the State has waived its Eleventh Amendment immunity is the third *Kardon* question.

■ States can waive their Eleventh Amendment immunity, but such a waiver must be stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1361 *citing Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909); *Daye v. Pennsylvania,* 483 F.2d 294, 298 (3d Cir.1973), *cert. denied sub nom. Meyers v. Pennsylvania,* 416 U.S. 946, 94 S.Ct. 1956, 40 L.Ed.2d 298 (1974). It is well established that if a state waives its sovereign immunity and consents to have suits brought against it in a state court, this does not waive the state's Eleventh Amendment immunity against suits brought in federal court. *See Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 276–77, 79 S.Ct. 785, 787–88, 3 L.Ed.2d 804 (1959); *Great N. Life Ins.*

*Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 876, 88 L.Ed. 1121 (1944).

■ The State of Delaware has adopted a limited waiver of its sovereign immunity. 18 *Del.C.* § 6511 (1975).[4] This express waiver of immunity applies only when the state has some type of insurance program in effect to protect the state against a particular risk. The plaintiffs have not alleged that the state has insurance to protect against the risk of injury while swimming in the ocean and Hopkins' opening briefs expressly contend that such insurance does not exist. (D.I. 14 at 7–8 [Dewey Beach]; D.I. 15 at 7–8 [Bethany Beach].) Even if the state did have insurance, there would only be a waiver of the state's sovereign immunity and not a waiver of its Eleventh Amendment immunity against being sued in federal district court. *West v. Keve,* 541 F.Supp. 534, 537–38 (D.Del.1982).

■ Given the court's conclusions that if Hopkins is being sued in his official capacity, then the State is the real, substantial party in interest and that the State has not waived its Eleventh Amendment immunity, the Court holds that the Eleventh Amendment bars the exercise of subject matter jurisdiction over the plaintiffs' actions against Hopkins in his official capacity. Therefore, Hopkins' motions to dismiss will be granted with respect to all three counts of the plaintiffs' complaints filed against him in his official capacity.

B. *Individual Capacity*

The Eleventh Amendment applies to suits brought directly against a state and to suits, such as the present actions, where the state is the real party in interest. The Eleventh Amendment does not preclude the plaintiffs from suing Hopkins individually in this Court for his allegedly tortious acts in an attempt to impose personal liability upon him.[5]

---

4. 18 *Del.C.* § 6511 provides:
   The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance, and every commercially procured

insurance contract shall contain a provision to this effect, where appropriate.

5. As mentioned above, the plaintiffs' complaints do not explicitly state whether Hopkins is being sued just in his official capacity or in his official capacity and individually. The plaintiffs make certain legal arguments in their briefs which indicate that they seek to recover directly from

The plaintiffs acknowledge that the Delaware Torts Claims Act, 10 *Del.C.* § 4001 (1975), provides immunity to public officials, such as Hopkins, for many of their official acts. Section 4001 of the Act states:

Except as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the members of any board, commission or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, where the following elements are present:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence.

The plaintiffs contend that § 4001 does not provide Hopkins with personal immunity because their complaints allege that Eric Smith's and Kevin Whalen's injuries were

caused by Hopkins' "gross or wanton negligence." If this is true, according to the plaintiffs, then the third element of § 4001 is missing.

The plaintiffs' argument that the third element of § 4001 is missing presupposes that Hopkins had a duty to take some action to prevent the injuries. Hopkins contends that he did not have any duty which means the plaintiffs have failed to state a claim upon which relief can be granted. The Court agrees with Hopkins and therefore will grant his motions to dismiss all claims made against him individually.[6]

In their complaints, the plaintiffs allege that the Director of Parks and Recreation has joint control with the municipalities over the beach areas where the accidents occurred. (D.I. 1 at ¶ 6.) This allegation is the lynchpin of the plaintiffs' argument that Hopkins had a legal duty to keep the beaches safe. In an affidavit accompanying his opening briefs, Hopkins responded to this allegation stating, "[t]o the best of my knowledge and belief, the Division of Parks and Recreation has no responsibility or authority to police, lifeguard or supervise swimming activities occurring within the Town of [Dewey/Bethany] Beach." (D.I. 14 [Dewey Beach]; D.I. 15 [Bethany Beach]; Affidavit of William J. Hopkins, ¶ 5.) The plaintiffs' only response to Hopkins' contention was to cite Section 1.05 of the Delaware Park Rules and Regulations, Division of Parks and Recreation, which provides:

The Director, or his authorized agent, may temporarily close or curtail activities ... upon any lands or waters or any portions thereof *administered by the Division,* when it has been deemed necessary to be in the best interest of public safety, conduct, health, order or detriment to the environment. (Emphasis added)

Hopkins as well as from the State. This prompts the Court to resolve the motions to dismiss on the assumption that Hopkins is being sued in both his official and individual capacities.

**6.** Although Hopkins' lack of a duty to the plaintiffs is discussed in the context of his individual capacity, the Court notes that the absence of a duty argument is an alternative to the Eleventh Amendment basis for dismissing the suits against Hopkins in his official capacity.

After citing this regulation, the plaintiffs' briefs boldly conclude "[t]here is no doubt that the Defendant Director of Parks and Recreation has joint control over the beach area where the accident complained of in this litigation occurred.... ¶ 1.05 ... makes it clear that the Director is charged with the duty of taking reasonable steps for the protection of the public." (D.I. 16 at 8–9 [Dewey Beach]; D.I. 17 at 8–9 [Bethany Beach].)

The Court recognizes the well established rule that when adjudicating a motion to dismiss all well-pleaded facts should be taken as true, and that "the motion can be granted where the court finds that under no set of facts would the plaintiffs be entitled to recover." *McQuail v. Shell Oil Co.,* 40 Del.Ch. 410, 183 A.2d 581, 583 (1962). This rule is subject to the qualification that only "well-pleaded factual allegations" are to be taken as admitted. *Id., citing Danby v. Osteopathic Hosp. Ass'n,* 34 Del.Ch. 172, 101 A.2d 308 (1953), *aff'd,* 34 Del.Ch. 427, 104 A.2d 903 (Del.Supr.1954); *Colton v. Wade,* 32 Del.Ch. 122, 80 A.2d 923 (1951).

The Court concludes that the plaintiffs' allegations that the Director of Parks and Recreation has joint control with the municipalities of Dewey Beach and Bethany Beach over their beaches is not a well-pleaded fact. The plaintiffs have failed to provide the Court with any basis for this conclusion and the Court's own research did not uncover any grounds for the joint control allegation. Simply referring to Section 1.05 of the Delaware Park Rules and Regulations is insufficient because the Regulation assumes that Hopkins has joint control. Given that Hopkins did not have joint control over the beaches, he does not have a duty as an individual to protect Eric Smith and Kevin Whalen from injury. Hopkins, similar to any other private citizen in Delaware, has neither the power nor duty to alleviate or warn of the allegedly dangerous conditions of the beach. The lack of any basis for determining that Hopkins as a private citizen owed the plaintiffs

any duty leads this Court to conclude that there is no set of facts under which the plaintiffs can recover from Hopkins. Therefore, Hopkins' motions to dismiss all the claims against him will be granted.[7]

An order will be entered in conformity with this opinion.

***

**7.** The determination that Hopkins does not have joint control over the beaches and therefore does not owe any duty to the plaintiffs eliminates the need for the Court to consider Hopkins' arguments that he has official immunity or that Eric and Kevin assumed the risk of injury.