Daniel Scott **PETRICHKO**, Plaintiff,

v.

David **KURTZ**, Warden, Gene Berdinere, Deputy Warden, Nicholas Martyak, M.D., and Scott Rizzardi, Correctional Officer, Defendants.

No. Civ.A. 98–2790.

United States District Court, E.D. Pennsylvania.

June 23, 1999.

Daniel Scott Petrichko, Albion, PA, pro se.

Frank Robert Cori, Assistant County Solicitor, Pottsville, PA, for defendants.

### *MEMORANDUM*

LOWELL A. REED, Jr., Senior District Judge.

Presently before the Court is the motion of defendants David Kurtz, Warden ("Kurtz"), Gene Berdinere, Deputy Warden ("Berdinere"), and Scott Rizzardi, Correctional Officer ("Rizzardi") (collectively "the institutional defendants") to dismiss the second amended complaint (Document No. 21) pursuant to Federal Rule of Civil Procedure 12(b)(6) and the answer of *pro se* plaintiff Daniel Scott Petrichko ("Petrichko") thereto (Document No. 22). Based on the following analysis, the motion of the institutional defendants will be granted in part and denied in part.

### I. Background[1]

Petrichko filed a complaint in this Court alleging claims under 42 U.S.C. § 1983 that the defendants violated his rights under the Eighth Amendment. Petrichko was an inmate at the Schuylkill County Prison at the time of the events alleged in his complaint. Specifically, he alleges that on July 30, 1997, another inmate pushed him into a steel pole which dislocated his shoulder. (Second Amended Complaint at 1). Petrichko alleges that he asked Rizzardi, the guard on duty, to go to the

---

1. The following facts are gleaned from the complaint and taken as true and in the light most favorable to plaintiff, as the non-moving party.

hospital, but Rizzardi told Petrichko that there were not enough personnel to take him to the hospital at that time. (Second Amended Complaint ¶ 2). Rizzardi then purportedly instructed another inmate to relocate Petrichko's shoulder. (Second Amended Complaint ¶ 3). Petrichko alleges that although Nicholas Martyak, the prison doctor ("Martyak"), came to the prison every Wednesday and Friday, the plaintiff was refused permission by Kurtz to see Martyak until August 15, 1997. (Second Amended Complaint ¶ 10). Specifically, Petrichko alleges, Kurtz ignored multiple written requests submitted between July 30, 1997 and August 15, 1997 by Petrichko for medical treatment. (Second Amended Complaint ¶ 10).

Petrichko was transferred to Luzerne County Prison on August 29, 1997, where he remained until September 19, 1997. (Second Amended Complaint ¶¶ 11, 13). At Luzerne, he alleges to have had X-rays taken and to have been prescribed Naprosyn for his shoulder pain. (Second Amended Complaint ¶¶ 11, 12). He alleges that he left Luzerne County Prison before the results of the X-rays came back. (Second Amended Complaint ¶ 13). Petrichko purports that when he returned to Schuylkill County Prison, he informed the nurse that X-rays had been taken and asked to see the prison doctor. (Second Amended Complaint ¶¶ 13, 14). He alleges that he was denied permission to see Dr. Martyak at that time. (Second Amended Complaint ¶ 14). He further alleges that the supervisor on duty at this time, Deputy Warden Berdinere, refused to give him ice for the swelling in his left shoulder. (Second Amended Complaint ¶ 21). Petrichko left for S.C.I. Camp Hill on October 2, 1997, where he saw a bone specialist and had more X-rays taken on October 29, 1997. The specialist allegedly informed Petrichko that the delay in his medical treatment had caused a permanent injury to his left shoulder. (Second Amended Complaint ¶ 26). Petrichko alleges that all of the defendants acted with deliberate indifference in failing to provide medical care for his shoulder injury. (Second Amended Complaint ¶ 31).

On July 1, 1998 Petrichko filed a complaint against the institutional defendants and Martyak, alleging a violation of his constitutional rights under 42 U.S.C. § 1983. On August 31, 1998, after learning of defendant Martyak's death, Petrichko filed a motion to amend the complaint so as to add the estate of Martyak, and on October 1, 1998, the institutional defendants and the estate of Martyak filed a motion to dismiss. This Court, in a Memorandum and Order ("Order") dated January 6, 1999, denied Petrichko's motion to amend the complaint by adding Martyak's estate and dismissed the complaint as to Martyak. The Court also dismissed the complaint as to the institutional defendants without prejudice to the right of Petrichko to file an amended complaint alleging that the institutional defendants knew that there was a substantial risk of serious harm to the defendant. Petrichko filed this amended complaint on January 25, 1999. It is this "Second Amended Complaint" (Document No. 20) which is the object of the instant motion to dismiss.

The institutional defendants move to dismiss the allegations against them on the grounds that: (1) any and all action taken by the institutional defendants with respect to Petrichko's medical care were reasonable and justified and Petrichko's claims are based on a difference of opinion between Petrichko and the defendants as to how he should have been treated (Motion to Dismiss the Second Amended Complaint at 3), (2) Petrichko's allegations relating to his medical treatment do not constitute deliberate indifference (Motion to Dismiss the Second Amended Complaint at 3), (3) Petrichko fails to set forth any relevant facts in support of these allegations (Motion to Dismiss the Second Amended Complaint at 3), (4) liability cannot be imposed on Defendants Kurtz and Berdinere for negligent supervision or training of Defendant Rizzardi because

the doctrine of respondeat superior may not be employed to impose § 1983 liability on a supervisor for the conduct of a subordinate which violates constitutional rights (Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint at 6), (5) the institutional defendants are immune from suit under § 1983 (Motion to Dismiss the Second Amended Complaint at 3), and (6) the complaint is frivolous in that there is no factual basis for any of the claims made by Petrichko (Motion to Dismiss the Second Amended Complaint at 3).

Petrichko responds to the motion of the institutional defendants by arguing that the institutional defendants are not immune, that his claims are not frivolous, and that the actions of the institutional defendants in delaying his care constitute deliberate indifference. (Answer to Defendants' Motion to Dismiss at 14, 16, 17).

## II. Legal Standard for a Motion to Dismiss

Rule 12(b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be made by motion: (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

The Federal Rules of Civil Procedure require only notice pleading. *See* Fed. R.Civ.P. 8(a) (providing that pleadings should contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). Because Petrichko's complaint is *pro se*, it must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal quotes omitted).

## III. Analysis

■ To state a claim under § 1983 for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate that the defendants exhibited "deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 104, 97 S.Ct. 285. The necessary inquiry, therefore, is bifurcated: the defendants must have exhibited deliberate indifference and the medical need must be serious.

### A. Seriousness

■ The "seriousness" of a medical need may be demonstrated, and the second prong of the *Estelle* test satisfied, *see* 429 U.S. at 104, 97 S.Ct. 285, if a plaintiff is able to demonstrate that the need is " 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' " *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir.1981)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Lanzaro*, 834 F.2d at 347.

■ Petrichko has, given the foregoing standard, alleged a serious medical need in that he claims that he has suffered a permanent injury. (Second Amended Complaint ¶ 25). Moreover, he alleges that, as determined by the state prison doctors, the permanent injury was caused by the lack of proper medical treatment. (Second Amended Complaint ¶ 26). Under *Lanzaro*, where an inmate is caused to suffer a permanent loss, the medical need is considered serious. 834 F.2d at 347.

### B. Deliberate Indifference to Plaintiff's Serious Medical Need

To demonstrate deliberate indifference, a plaintiff must show that the defendants were more than merely negligent in diagnosing or treating his serious medical condition. A claim under § 1983 cannot be based solely on a prisoner's disagreement with the medical care he received. *See Estelle*, 429 U.S. at 107, 97 S.Ct. 285 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *Lanzaro*, 834 F.2d at 346. However, if prison authorities deny reasonable requests for medical treatment, and thereby subject the inmate to undue suffering or a threat of tangible residual injury, or if they delay treatment for non-medical reasons, deliberate indifference may be present. *See id.* at 346–47. Moreover, deliberate indifference is demonstrated when an inmate is denied access to a physician capable of determining whether such treatment is necessary. *See id.* at 347; *see also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979) ("When ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment, the constitutional standard of *Estelle* has been violated.").

A prison official's conduct does not constitute deliberate indifference, however, unless it is accompanied by a particular mental state. Specifically, "the official [must] know ... of and disregard ... an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). While a plaintiff must allege that the official was subjectively aware of the requisite risk, he or she may demonstrate that the prison official had knowledge of the risk through circumstantial evidence, and "a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842, 114 S.Ct. 1970.

Accepting Petrichko's claims as true, the Court finds that he has sufficiently pled that each individual defendant has demonstrated deliberate indifference to the plaintiff's serious medical needs. Rizzardi, Petrichko claims, informed Petrichko that he could not be taken to a hospital because "there was [not] enough personal (sic) on duty to take him." (Second Amended Complaint ¶ 2). Moreover, Rizzardi allegedly instructed another inmate to manually relocate the plaintiff's shoulder. (Second Amended Complaint ¶ 3). These actions constitute the delay of treatment for non-medical purposes and the denial of access to a physician capable of determining whether such treatment is necessary. Moreover, in addition to alleging knowledge of his injuries on the part of all three defendants (Second Amended Complaint ¶¶ 23, 27, 29), Petrichko states that Rizzardi specifically "recognized the injury." (Second Amended Complaint ¶ 4). In the context of a 12(b)(6) motion, this latter allegation satisfies the subjective knowledge requirement as delineated in *Farmer*. 511 U.S. at 837, 114 S.Ct. 1970. Thus, Petrichko's Second Amended Complaint includes allegations of both conduct and a mental state on the part of defendant Rizzardi which constitute deliberate indifference.

Kurtz, for his part, is alleged by Petrichko to have ignored the latter's written requests for medical treatment during the period from July 30, 1997 to August 15, 1997. (Second Amended Complaint ¶ 10). Though unartfully stated, Petrichko also alleges that the reason for such was non-medical in nature (Second Amended Complaint ¶ 10), and it is possible that he will be able to prove facts to this effect. Moreover, Petrichko alleges that Kurtz's actions during this important time period served

to deny him access to a physician capable of evaluating the need for treatment. As for this defendant's mental state, Petrichko alleges that Kurtz "had actual knowledge of plaintiff's injuries and the staff's failure to provide standard emergency care and treatment." (Second Amended Complaint ¶ 15). Together, these allegations state a claim for deliberate indifference. *See Lanzaro*, 834 F.2d at 346 (" '[W]here knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.") (quoting *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir.1985)).

 Petrichko further alleges conduct on the part of defendant Berdinere, namely that the Deputy Warden failed to provide him with ice when requested. (Second Amended Complaint at ¶ 21). Petrichko's allegation focuses on acts which delayed the plaintiff's treatment for non-medical reasons, as this refusal was purportedly explained by Berdinere as being based on the fact that the ice machine was broken. (Second Amended Complaint at ¶ 21). *See Lanzaro*, 834 F.2d at 346–47; *West v. Keve*, 571 F.2d 158, 162 (3d Cir.1978) (stating that post-operative treatment specifically, as opposed to the entire course of the plaintiff's interaction with the relevant medical service providers, constitutes "treatment" for purposes of the *Estelle* test). Moreover, Berdinere's failure to provide Petrichko with access to a physician in lieu of the ice could also support Petrichko's claim for deliberate indifference. *See Lanzaro*, 834 F.2d at 347. As Petrichko further alleges that Berdinere "had personal knowledge of plaintiff's injuries" (Second Amended Complaint ¶ 21), the subjective knowledge component of the deliberate indifference standard is satisfied. Thus, the alleged conduct and mental state of Deputy Warden Berdinere constitute deliberate indifference.

Though conclusory, under the liberal notice pleading regime established by the "short and plain statement" requirement of Rule 8(a) of the Federal Rules of Civil Procedure, and given the fact that Petrichko is proceeding *pro se*, these allegations are sufficient and will survive the instant motion to dismiss. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) ("[T]he Federal Rules [of Civil Procedure] do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging ... liability under § 1983. Expressio unius est exclusio alterius.").

Given the foregoing analysis, the Court concludes that Petrichko has made all of the requisite allegations under *Estelle, see* 429 U.S. at 104, 97 S.Ct. 285, and *Farmer, see* 511 U.S. at 837, 114 S.Ct. 1970. In other words, in the language of *Estelle*, the plaintiff's pleadings do *not* render it "beyond doubt that [Petrichko] can prove no set of facts in support of his claim which would entitle him to relief." Therefore, *Estelle* counsels that dismissal of any of the claims in this action pursuant to Rule 12(b)(6) on the ground that they do not constitute deliberate indifference would be inappropriate.[2]

## C. Respondeat Superior Liability and Negligent and Inadequate Training and Supervision

 The institutional defendants are correct in their assertion that "[t]he doctrine of respondeat superior may not be

---

**2.** Indeed, despite the institutional defendants' argument to the contrary, Petrichko's claims cannot be dismissed as "nothing more than a difference of opinion between the Plaintiff and prison physician as to what type of medical attention is necessary" (Memorandum in Support of Defendants' Motion to Dismiss p. 4). Rather, Petrichko's claims focus on the denial of access to medical attention in the first instance, not the substance of that care in the second.

employed to impose § 1983 liability on a supervisor for the conduct of a subordinate [who] violates [the] constitutional rights [of another]." (Memorandum in Support of Defendants' Motion to Dismiss at 6). *See Board of County Comm'rs v. Brown,* 520 U.S. 397, 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3d Cir.1995). Thus, although it is unclear if Petrichko is actually alleging respondeat superior liability on the part of Kurtz or Berdinere, to the extent that any of the plaintiff's claims might be interpreted as seeking relief under a respondeat superior theory of recovery, they will be dismissed.

■ The institutional defendants follow this line of argument in asserting that liability cannot be imposed on Defendants Kurtz and Berdinere for *negligent* supervision or training of Defendant Rizzardi. (Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint at 6) (emphasis added). While this logic is questionable, the latter proposition is also correct as a matter of law. Accordingly, to the extent that any of the plaintiff's claims might be interpreted as seeking relief under a theory of negligence, they will be dismissed.

This does not mean, however, that no claim based upon the training or supervision of Rizzardi by Kurtz or Berdinere is possible. Quite the contrary, a cognizable claim could certainly sound in such, provided the lack or inadequacy of training is the product of deliberate indifference as opposed to mere negligence or respondeat superior liability. *See Carter v. City of Philadelphia,* 181 F.3d 339, 355 (3d Cir. 1999).

■ Petrichko alleges a set of facts which could give rise to a finding of deliberate indifference with regard to the training or supervision given by defendants Kurtz and Berdinere to defendant Rizzardi. In paragraph 20 of the Second Amended Complaint, the plaintiff alleges that inadequacies in Kurtz's and Berdinere's training of Rizzardi led to the medical treatment decisions which, when accompanied by the requisite subjective knowledge, do, as discussed, constitute deliberate indifference. This is a sufficient allegation of conduct which constitutes deliberate indifference. Moreover, in several different paragraphs of the Second Amended Complaint, Petrichko alleges knowledge by these defendants. (Second Amended Complaint at ¶¶ 15, 23, 24, 27, 29). When construed liberally, as must be done with a *pro se* complaint, I find that these allegations constitute a claim of subjective knowledge on the part of the Warden and Deputy Warden as to their alleged failure to adequately supervise or train Rizzardi. *See Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. In other words, in a manner consistent with his allegations, Petrichko could prove that the failure to provide Rizzardi with the requisite training was a "conscious decision." *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1062 (3d Cir. 1991). Accordingly, none of Petrichko's claims alleging deliberate indifference in the supervision or training of defendant Rizzardi will be dismissed pursuant to 12(b)(6).

## D. *Immunity*

As for the institutional defendants' contention that they are immune from suit under § 1983, this precise argument was addressed in the January 5, 1999 Order, dismissing without prejudice Petrichko's complaint as to those defendants, and granting Petrichko leave to file this second amended complaint. In footnote 2 of the Order, I held:

> In support of their fourth argument, the institutional defendants cite *Delaney v. Shobe,* 235 F.Supp. 662, 666 (D.Or.1964), for the proposition that "jailers, institutional superintendents and keepers of almost all varieties enjoy a sweeping immunity under the Civil Rights Act." However, the issue in that case was the liability of prison officials for incarcerating a prisoner pursuant to a court order;

thus, the reasoning of that case is inapposite to the claims of Petrichko against the institutional defendants.

The institutional defendants have not altered their argument or their reliance on *Delaney,* and as such, their argument remains unpersuasive.

### E. Frivolousness

 Given the foregoing analysis, it is apparent that Petrichko's claims are not frivolous under 28 U.S.C.A. § 1915. Dismissal on frivolousness grounds "is proper [only] when the complaint is based upon an 'indisputably meritless legal theory or on completely baseless factual contentions.'" *Young v. Kann,* 926 F.2d 1396, 1399 (3d Cir.1991) (quoting *Wilson v. Rackmill,* 878 F.2d 772, 774 (3d Cir.1989)). The former category encompasses cases "'in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from the suit,'" while the latter includes cases "'describing scenarios clearly removed from reality.'" *Roman v. Jeffes,* 904 F.2d 192, 194 (3d Cir.1990) (quoting *Sultenfuss v. Snow,* 894 F.2d 1277, 1278 (11th Cir.1990)).

Here, as discussed, it is neither the case that the institutional defendants are immune from § 1983 actions, nor that Petrichko's complaint lacks an arguable basis in law. Thus, the plaintiff has not proffered an indisputably meritless legal theory, the first possible basis for a frivolousness finding. Moreover, it is far from clear that the scenario described by Petrichko is removed from reality. Thus, the complaint is not predicated upon completely baseless factual contentions, the final possible basis for a frivolousness finding.

### IV. Conclusion

Based on the foregoing, the motion of the institutional defendants will be granted in part and denied in part. An appropriate Order follows.

### *ORDER*

**AND NOW** this 23rd day of June, 1999, upon consideration of the motion of defendants David Kurtz, Warden, Gene Berdinere, Deputy Warden, and Scott Rizzardi, Correctional Officer (collectively "the institutional defendants") to dismiss the second amended complaint (Document No. 21) pursuant to Federal Rule of Civil Procedure 12(b)(6) and the answer of *pro se* plaintiff Daniel Scott Petrichko thereto (Document No. 22), and based upon the foregoing memorandum, it is hereby **ORDERED** that:

1. The motion of institutional defendants Kurtz and Berdinere to dismiss is **GRANTED** insofar as it pertains to claims sounding in respondeat superior liability or negligence, and all claims sounding in respondeat superior liability or negligence are hereby **DISMISSED.**

2. The motion of the institutional defendants to dismiss is otherwise **DENIED.**

**IT IS FURTHER ORDERED** that the institutional defendants shall answer the second amended complaint no later than **August 2, 1999.**