Daniel Scott **PETRICHKO**, Plaintiff,

v.

David **KURTZ**, Warden, Gene Berdinere, Deputy Warden, Nicolas Martyak, M.D., and Scott Rizzardi, Correctional Officer, Defendants.

No. CIV. A. 98–2790.

United States District Court, E.D. Pennsylvania.

Oct. 4, 2000.

Daniel Scott Petrichko, Albion, PA, pro se.

Alan S. Gold, Monaghan & Gold, P.C., Elkins Park, PA, for Nicolas Martyak, M.D.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Plaintiff Daniel Scott Petrichko brought this action under 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth Amendment. Defendants have moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure (Document No. 40). For the following reasons, the motion of defendants will be denied.

### Introductory Facts [1]

Petrichko, who was a prisoner at the Schuylkill County Prison, was playing basketball at the prison on July 30, 1997, when another inmate shoved him into a steel pole, dislocating his shoulder. According to plaintiff, defendant Scott Rizzardi, a prison guard, was supervising the yard at the time and witnessed the incident. Rizzardi approached plaintiff immediately after the incident and asked if he was okay. When plaintiff asked Rizzardi to take him to the hospital, Rizzardi allegedly responded by saying that there were not enough prison personnel to transport him to the hospital and instructed another inmate to reset plaintiff's shoulder. Later that day, plaintiff alleges, he told defendant Gene Berdanier,[2] the deputy warden, about his injury and the cause and requested ice to control the swelling; Berdanier refused, purportedly stating that the ice machine was too far away or not in operation. Despite numerous requests to see a physician, plaintiff alleges that he was not seen by a physician until two weeks after the incident. Plaintiff claims that he now suffers from a permanent disability because of the failure of defendants to secure medical care for his injured shoulder.

### Summary Judgment

In deciding a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (citing *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994)). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250, 106 S.Ct. 2505.

On a motion for summary judgment, the facts should be reviewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue

---

1. The facts are extracted from the complaint, the affidavit of plaintiff, his deposition, and medical records, with all inferences taken in favor of plaintiff as required by the law.

2. Apparently Gene Berdanier's name is spelled incorrectly on the docket. For the sake of consistency with the docket, I retain the incorrect spelling in the caption only, and use the correct spelling in the text of the decision.

of material fact in order to avoid summary judgment. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

### Analysis

■■ An Eighth Amendment violation occurs when prison officials respond or fail to respond to a prisoner's medical needs in a manner that caused "an unnecessary and wanton infliction of pain" or was "repugnant to the conscience of mankind." *Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials have "considerable latitude in the diagnosis and treatment of prisoners," *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993), and allegations of mere negligence and medical malpractice are insufficient to state a claim under the Eighth Amendment. Thus, as discussed in this Court's memorandum opinion on defendants' motion to dismiss (Document No. 24), in order to prevail on an Eighth Amendment claim, a plaintiff must demonstrate that the defendants exhibited "deliberate indifference to [his] serious medical needs." *Petrichko v. Kurtz,* 52 F.Supp.2d 503, 507 (E.D.Pa.1999) (quoting *Estelle,* 429 U.S. at 104, 97 S.Ct. 285).

■■ To establish deliberate indifference, plaintiff must establish that: (1) he had a serious medical need and (2) defendants were aware of this need and deliberately indifferent to it. *See Holland v. Ward,* No. 97–3923, 1999 WL 1240947, 1999 U.S. Dist. LEXIS 19411, *8 (E.D.Pa. Dec. 21, 1999) (citing *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Inmates of Allegheny Cty. Jail v. Pierce,* 612 F.2d 754, 764 (3d Cir.1979)); *see also Monmouth Cty. Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987) (citation omitted), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988).[3]

### 1. Serious Medical Need

Plaintiff Petrichko has produced evidence—in the form of his affidavit, deposition testimony, and the reports of physicians—showing that he suffered a serious injury.

First, there is evidence from which a reasonable jury could find that plaintiff's shoulder was dislocated. Medical records produced by plaintiff indicate that physicians who treated him concluded that he had dislocated his shoulder. Specifically, a record of a physical examination plaintiff underwent at State Correctional Institution–Camp Hill three months following the incident states in a section designated "Abnormal Findings" the following information: "L shoulder visible anterior dislocation: replaceable ... atrophy." (Physical Examination, SCI Camp Hill, Oct. 27, 1997, Plaintiff's Exh. XI.) A record of a physician visit at State Correctional Institution–Albion indicates "anterior dislocation demonstrable" and references "chronic recurrent dislocations." (Progress Notes, July 29, 1998, Plaintiff's Exh. XI.) Defendants' own expert concluded, upon a review of plaintiff's medical records, that plaintiff "has a condition of recurrent dislocation of the left shoulder" and "suffers from either recurrent anterior dislocation or ... anterior recurrent subluxation." (Letter of Michael H.O. Dawson, Jan. 27, 2000, at 3.)

■ Is a dislocated shoulder a serious medical need? I conclude that it is. A dislocated shoulder undisputably causes great pain, and the evidence—including records showing that plaintiff's work activities were restricted because of the dislocated shoulder—indicates that a dislocated shoulder can lead to permanent disability. (Medical Clearance Forms, Oct. 27, 1997, May 21, 1998, July 30, 1998, Plaintiff's Exh. XI.)[4] Defendants' arguments that

---

**3.** Short of absolute denial, "if necessary medical treatment is ... delayed for non-medical reasons, a case of deliberate indifference has been made out." *Monmouth,* 834 F.2d at 346

(quoting *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 704 (11th Cir.1985)).

**4.** In his deposition testimony, Petrichko testified that since the July 30, 1997 incident, his

the dislocation was immediately reduced begs the question of whether the circumstances of the reduction itself violated plaintiff's constitutional rights, and whether, despite that immediate reduction, further medical care was needed.

I conclude on the basis of plaintiff's affidavit, deposition, medical records, and relevant case law, that a reasonable jury could find that plaintiff had a serious medical need arising out of the July 30, 1997 incident. *See Higgins v. Correctional Medical Servs. of Illinois, Inc.*, 178 F.3d 508, 511 (7th Cir.1999) ("For purposes of this case, it is undisputed that a shoulder dislocation causes great pain and is a serious medical need.").

## 2. Deliberate Indifference

█ Plaintiff also has produced evidence from which a reasonable jury could infer that defendants were deliberately indifferent to his serious medical need. Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference may be inferred when a prison official knows of a prisoner's need for medical treatment but intentionally fails to provide it; delays necessary medical treatment for a non-medical reason; or prevents a prisoner from receiving medical treatment that was needed or recommended. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999).

Plaintiff has produced evidence, in the form of his deposition testimony and affidavit, that defendant Rizzardi witnessed his initial injury, refused to secure immediate medical treatment, and directed another inmate to reset plaintiff's dislocated shoulder. (Plaintiff's Deposition, at 32; Affidavit of Daniel Scott Petrichko, at ¶ 3, Plaintiff's Exh. XIX ("Plaintiff's Affidavit").) Furthermore, plaintiff testified during his deposition that he spoke with Rizzardi the night of and in the days after the accident, requesting medical treatment. (Plaintiff's Deposition, at 26.) He also testified that he explained the injury and its cause to defendant Berdanier the night of the incident and requested ice. (Plaintiff's Deposition, at 26.)[5] Finally, plaintiff has produced evidence that he sent numerous request slips directly to defendant Kurtz during the days following his injury requesting medical attention, to which he received no response. (Plaintiff's Affidavit, ¶ 5.)

The above evidence establishes a genuine issue of material fact as to whether defendants refused to provide medical treatment or delayed medical treatment for a non-medical reason. Viewed in the light most favorable to plaintiff, the evidence demonstrates that: (1) defendant Rizzardi witnessed plaintiff's injury, recognized its seriousness, refused to ensure immediate professional medical care, and presided over the provision of medical care by an individual not qualified to provide such care; (2) defendant Berdanier was told about plaintiff's injury, refused to provide ice to plaintiff, and refused to secure him medical attention; and (3) defendant Kurtz received numerous written requests from plaintiff for access to a physician and failed to respond.

shoulder "pops out of place," on a frequent basis, and he is unable to engage in activities ranging from lifting and running to throwing and swinging. (Deposition of Daniel Scott Petrichko, Nov. 17, 1999, at 51–52.) ("Plaintiff's Deposition") He also has been unable to work certain prison jobs that involve lifting. (*Id.* at 49–50.)

**5.** I note that the Eighth Circuit concluded that the mere provision of ice-pack for inmate's fractured hand constituted deliberate indifference to a serious medical need where prison guard knew medical care was needed. *See Robinson v. Moreland*, 655 F.2d 887, 889–90 (8th Cir.1981). Thus, it could be argued on the basis of *Robinson* that even if Berdanier had provided ice for plaintiff, the failure to secure medical attention could still have constituted deliberate indifference to a serious medical need.

Deliberate indifference is demonstrated "when ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment." *See Monmouth,* 834 F.2d at 347 (quoting *Inmates of Allegheny Cty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979)). Plaintiff has produced evidence that for two weeks, he was denied access to a physician capable of evaluating his need for treatment. I conclude that a reasonable jury could find from the evidence now in the record that despite each defendant's knowledge of plaintiff's injury, each defendant acted with deliberate indifference in failing to secure medical care for him, and their refusal resulted in a two-week delay between the dislocation of his shoulder and his access to a physician.

### 3. Causation

Finally, I conclude that there is a genuine issue of material fact as to whether the alleged deliberate indifference of defendants caused plaintiff's injury. A reasonable inference can be drawn based on the evidence in the record that the alleged resetting of plaintiff's shoulder by another prisoner, at the direction or supervision of Rizzardi, caused the permanent disability of which plaintiff now complains. Defendants' medical expert observed that if plaintiff's shoulder indeed been dislocated on July 30, 1997,

> no one would have been able to reduce it without medical knowledge. Acute anterior shoulder dislocations often require general anesthesia to reduce. Very occasionally, such as on the athletic field, such a dislocation can be reduce by someone knowledgeable in the appropriate maneuver.

(Letter of Michael H.O. Dawson, Jan. 27, 2000, at 3.) A reasonable jury could infer from such an expert observation that a dislocated shoulder that was improperly reset by someone without medical knowl-

edge could have exacerbated the injury or caused further injury, and thus been a substantial factor causing the current disability to plaintiff's shoulder.

Furthermore, a reasonable jury could find from the evidence that the two-week delay in receiving medical treatment exacerbated plaintiff's condition. A reasonable jury could infer that immediate medical attention could have led to pain relief, the therapeutic immobilization of the shoulder, restriction of plaintiff from activity that might exacerbate the condition, or other such treatment that could have had the affect of ameliorating or limiting plaintiff's injury. I conclude, therefore, that there is a genuine issue of material fact as to whether the two weeks without medical attention caused or exacerbated plaintiff's injury.[6]

### 4. Qualified Immunity

Defendants' contention that they are entitled to qualified immunity is not supported by the law or the facts. The defense of "qualified immunity" for public officials was clarified by the Supreme Court in *Siegert v. Gilley,* which instructed district courts to first determine "whether the plaintiff has asserted a violation of a constitutional right at all." 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see also Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (a court must first determine whether plaintiff has alleged deprivation of an actual constitutional right). The district court must then proceed to assess whether the right was "clearly established" at the time of the alleged violation, and whether the unconstitutional nature of the action would have been apparent to an objectively reasonable official. *See Showers v. Spangler,* 182 F.3d 165, 171–72 (3d Cir.1999).

The constitutional right at issue in this case—that is, the Eighth Amendment right of a prisoner to be free from deliberate indifference to serious medical needs—

---

**6.** See further discussion of causation below under "Defendants' Remaining Arguments."

was first articulated by the Supreme Court in 1976 and has remained the law of the land for nearly a quarter of a century. *See Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). There is, therefore, no question that the right asserted by Petrichko in this case was clearly established.

Would a reasonable prison official in the position of the defendants have been aware that his or her failure to provide medical care in the face of knowledge that plaintiff had dislocated his shoulder violated that right? I conclude based on the evidence in the record that a reasonable official who knew that a prisoner's shoulder had been dislocated would have known that (1) refusing immediate medical treatment to that prisoner, (2) allowing two weeks to pass before providing medical treatment to that prisoner, and (3) directing, supervising, or acquiescing in the efforts of another inmate who was not a physician to replace the dislocated shoulder, would indeed constitute deliberate indifference to a serious medical need and a violation of that prisoner's constitutional rights.

Therefore, I conclude that defendants are not entitled to immunity from suit under the doctrine of qualified immunity.

### 5. Defendants' Remaining Arguments

Defendants' remaining arguments do not divert me from my conclusions. First, defendants rely heavily on the differences between plaintiff's recollection of the facts and the personal recollections of the defendants themselves, who in their affidavits each deny having any knowledge of plaintiff's injury and the events forming the basis of this action. A disagreement over the facts in evidence is all plaintiff needs to survive summary judgment, and there is just such a disagreement here. Viewing the evidence in the light most favorable to plaintiff exposes genuine issues of material fact warranting the attention of a factfinder.

Second, defendants' argument that this case is merely about plaintiff's dissatisfaction with the medical care he received is flawed. This is not a case in which an injured plaintiff who was seen promptly by a prison physician later disagrees with the quality of care provided by that physician. This is a case in which a plaintiff alleges and has produced competent to show evidence that despite numerous requests, he was denied access to a physician for two weeks after a serious injury to his shoulder, and that during that time the only attention his injury received was a resetting of his shoulder by another inmate and a few over-the-counter pain killers from a prison nurse. Thus, this is not a mere claim of medical negligence or malpractice.

Third, defendants' contentions that plaintiff's shoulder injury is not serious are based on contested facts. Defendants point to an x-ray report characterizing plaintiff's shoulder as "normal" and a prison physician's diagnosis of a simple "shoulder strain," however, there is also medical evidence of a serious shoulder dislocation. (Physical Examination, SCI Camp Hill, Oct. 27, 1997, Plaintiff's Exh. XI; Progress Notes, July 29, 1998, Plaintiff's Exh. XI; Letter of Michael H.O. Dawson, Jan. 27, 2000, at 3, Defendant's Exh. 6B.) Thus, as noted above, a reasonable jury could conclude on the evidence in the record that plaintiff's injury was sufficiently serious.

Finally, defendants are misguided in their arguments that summary judgment should be granted because there is no expert testimony from plaintiff establishing a causal nexus between the deliberate indifference of defendants and any injury to plaintiff's shoulder. Courts have held on numerous occasions that a plaintiff need not present expert testimony to prevail in an Eighth Amendment case alleging deliberate indifference to a serious medical need. *See McCabe v. Prison Health Serv.,* 117 F.Supp.2d 443 (E.D.Pa.1997) ("In fact, there is no general requirement in the

Third Circuit that a plaintiff present expert testimony in Eighth Amendment deliberate indifference cases."); *Rizzolo v. Rivas*, No. 86–717, 1988 WL 50630, 1988 U.S. Dist. LEXIS 4465, at *2 (D.N.J. May 18, 1988) ("There is no requirement that plaintiff proceed with a medical expert to establish his alleged constitutional claim."); *Devens v. Stern*, No. 93–66, 1995 U.S. Dist. LEXIS 5033, at *5 (D.N.H. April 12, 1995) ("[A]lthough expert medical testimony could certainly bolster a prisoner's Eighth Amendment claim, such testimony is not required to establish that the prisoner had a serious medical need."); *see also Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994) ("We have never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony.... Expert testimony certainly could have bolstered Hathaway's case at trial, but the absence of such expert proof does not mandate dismissal of his action where the facts support a finding of deliberate indifference."), *cert. denied sub nom*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Oliver v. Deen*, 77 F.3d 156, 163 (7th Cir.1996) (Wood, J., dissenting) ("It is hardly realistic to expect a prisoner to track down medical experts and present their direct affidavits on a motion for summary judgment, especially when the prisoner is proceeding *pro se*.").[7]

Therefore, I do not find defendants arguments in favor of summary judgment to be persuasive.

**7.** Plaintiff will likely need more than what is now in the record to prevail at trial on the issue of causation. Petrichko will likely need to produce expert medical testimony to show that a delay in treatment in fact caused him injury. Such expert testimony cannot come from defendants' expert witnesses. Plaintiff claims that doctors at SCI Albion and Camp Hill "have stated that this injury is related to the delay in proper treatment." Plaintiff may need to produce the physician or physicians

### Conclusion

For the foregoing reasons, I cannot conclude that the evidence in the record is so one-sided that defendants are entitled to judgment as a matter of law. Therefore, defendants' motion for summary judgment will be denied and this controversy will be sorted out at trial.

that gave him this information or another physician to testify in order to establish that the conduct of defendants caused the damages he claims. But the reasonable inference, tenuous as it is, that the delay caused injury to plaintiff is sufficient to survive summary judgment, and plaintiff need not produce actual expert testimony at this stage. *See McCabe v. Prison Health Services*, No. 94–7286, 1997 WL 710943, 1997 U.S. Dist. LEXIS 18071, at *24 n. 8 (E.D.Pa.1997).