Arturo PARRILLA

v.

**Julius T. CUYLER, Warden, State Correctional Institution, Graterford, Pennsylvania, William B. Robinson, Commissioner of Corrections for the State of Pennsylvania, and John Negrey, Ophthalmologist at Graterford Penitentiary.**

Civ. A. No. 77–3839.

United States District Court,
E. D. Pennsylvania.

March 16, 1978.

Arturo Parrilla, pro se.

M. Faith Angell, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This action was brought *pro se* by Arturo Parrilla, an inmate at the State Correctional Institution at Graterford, against the prison superintendent ("Warden"), Julius T. Cuyler; Commissioner of Correction William B. Robinson; and a prison ophthalmologist, John Negrey. Plaintiff alleges that defendants violated his civil rights[1] by affording him inadequate medical treatment. Cuyler and Robinson have moved to dismiss for lack of jurisdiction and failure to state a claim.

■ Plaintiff's brief factual allegations are as follows:

"Shortly after plaintiff arrived at the prison (mentioned herein) he requested medical assistance in that one of his eyes was giving plaintiff pain and discomfort. In the month of April of 1976, plaintiff was called to the hospital (upon his request) wherein he was examined by Doctor John Negrey, and upon completion of the examination plaintiff was told that he would be taken to another place (Wills Eye Hospital) wherein his eye would have to be operated on otherwise he could loose [*sic*] his eye-sight.

Plaintiff returned to the hospital periodically to be treated with eye drops. Approximately on June 2, 1976 plaintiff again was examined by Doctor John Negrey and as a result of the examination plaintiff was told by the doctor that 'there is nothing we can do for you.' As a result of this plaintiff has lost total vision in one eye and is loosing [*sic*] his vision in the other eye. Again plaintiff is requesting adequate medical assistance and the doctor and the defendants mentioned herein are refusing to assist plaintiff in his medical needs."

The complaint asserts that defendants' conduct violates the prohibition against inflic-

---

1. The action is brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1343.

tion of cruel and unusual punishment.[2] The complaint also asserts that in some unspecified manner plaintiff has been treated differently than other inmates because of his Hispanic origin, and therefore plaintiff contends that he has been denied equal protection. Plaintiff seeks a declaratory judgment, an "injunction requiring the defendants to transfer plaintiff for treatment to the 'Wills Eye Hospital' or its equivalency," and damages.

 Defendants' jurisdictional argument is based on the Eleventh Amendment. They contend that plaintiff is seeking damages from them in their official capacity and that he therefore is attempting, in effect, to obtain money from the state in violation of the Eleventh Amendment prohibition. *See generally Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Under *Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), however, an Eleventh Amendment bar should not lightly be assumed from the face of the complaint. Instead, in a case such as this in which the plaintiff has not specified whether the defendants are sued in their official or personal capacities, the "allegations against state officials should be liberally construed in the plaintiff's favor." *Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963, 978–79 (E.D.Pa. 1977); *accord, West v. Keve,* 571 F.2d 158, 163 (3d Cir. 1978); *Ahmad v. Burke,* 436 F.Supp. 1307, 1312 (E.D.Pa.1977). I therefore shall not dismiss the claim for damages as violative of the Eleventh Amendment. Of course, the Eleventh Amendment is no bar to equitable relief against state officials in any event. *See, e. g., Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

 Defendants contend that plaintiff has failed to state a claim upon which relief can be granted because his factual allegations of medical mistreatment do not rise to the level of a constitutional violation. The controlling case on cruel and unusual pun-

ishment claims based on inadequate medical care is *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In that case, after reviewing its past decisions on the prohibition against cruel and unusual punishment, the Supreme Court concluded:

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical 'torture or a lingering death,' *In Re Kemmler,* [136 U.S. 436, 447, 10 S.Ct. 930, 34 L.Ed. 519 (1890)], the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. Cf. *Gregg v. Georgia,* [428 U.S. 153, 182–83, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)]. The infliction of such *unnecessary suffering is inconsistent with* contemporary standards of decency as manifested in modern legislation codifying the common-law view that 'it is but just that the public be required to care for the prisoner, who cannot, by reason of the deprivation of his liberty, care for himself.' [*Spicer v. Williamson,* 191 N.C. 487, 490, 132 S.E. 291, 293 (1926).]

We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia, supra,* 428 U.S. at 173, 96 S.Ct. 2909 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of

---

**2.** The Eighth Amendment to the Constitution prohibits the federal government from inflicting cruel and unusual punishment. That prohi-

bition applies to the states under the Due Process Clause of the Fourteenth Amendment.

how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." 429 U.S. at 103–05, 97 S.Ct. at 290 (footnotes omitted).

The Court cautioned, however, that a claim of mere negligence in diagnosis or treatment of a medical condition is not so offensive to "evolving standards of decency" (*Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)) as to constitute cruel and unusual punishment. 429 U.S. at 105–06, 97 S.Ct. 285. As it observed, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. at 292. The controlling standard, therefore, is whether the plaintiff has alleged "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.; see West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978) (recognizing that *Estelle* sets forth two-pronged test of deliberate indifference by defendants and seriousness of plaintiff's medical problems).

In this case I have no doubt that plaintiff's medical needs, as alleged, are serious. Plaintiff avers that as a result of improper medical treatment he is losing his sight. Loss of this important sense certainly is a major medical problem, and therefore plaintiff's allegations meet the seriousness requirement. *Cf. West, supra*, at 161–62.

The determinative issue in this case is whether the allegations set forth a claim of deliberate indifference. In focusing on this issue, I note at the outset that the motion to dismiss only deals with plaintiff's claims against Superintendent Cuyler and Commissioner Robinson. Apparently, defendant Negrey has not been served, and he is not a party to the motion. In *Estelle*, because the Court of Appeals had focused on the inmate's claims against the prison doctors and not those against prison supervisory personnel, the Supreme Court did not express its views on such claims against prison supervisors and remanded the case to the Court of Appeals for consideration of that issue. 429 U.S. at 108, 97 S.Ct. 285. On remand, the Court of Appeals held that the claims against the Director of the Department of Corrections and the prison warden should be dismissed:

"[The] complaint is directed primarily at the prison physician who actually performs the medical treatment, while the Director and the warden are parties, not for having failed to provide treatment, but more on respondeat superior principles in line with their official capacities. We can find no evidence in the record that either exhibited 'deliberate indifference' to Gamble's medical needs by means of interference with the prison doctor's performance or in any other manner which would satisfy the Supreme Court standard." *Gamble v. Estelle*, 554 F.2d 653, 654 (5th Cir. 1977) (per curiam).

▮ This analysis discloses that claims may not be asserted against prison supervisory personnel unless those defendants participated personally in the medical mistreatment. The Third Circuit's decision in *West, supra*, is in accord with this view. In that case, the Court of Appeals reversed the dismissal of an action against a Delaware prison superintendent and a state official of the Delaware prison system who allegedly refused to permit the plaintiff to obtain medically recommended vascular surgery (which was not available at the prison hospital) at a private hospital. See 571 F.2d at 160–61. Obviously, that allegation asserted personal involvement by those defendants.

In this case, plaintiff alleges that Dr. Negrey told him he would be taken to Wills Eye Hospital for an eye operation that was necessary to preserve his sight. The *pro se* allegations do not say whether this surgery recommendation was acted on by Cuyler or Robinson. Instead the allegations go on to tell of treatment at the prison hospital with eye drops and of an eventual loss of plaintiff's vision. The allegations conclude with the assertion that "the doctor and the defendants mentioned herein are refusing to assist plaintiff in his medical needs." The complaint discloses no specific allegations against Cuyler or Robinson.

In *Estelle, supra*, the Supreme Court reaffirmed the rule that a *pro se* complaint by a prisoner is to be construed liberally:

"As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears ' "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Id.*, at 520–521, 92 S.Ct. 594, quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." 429 U.S. at 106, 97 S.Ct. at 292. On the face of this complaint, however, no set of facts appear which show deliberate indifference to plaintiff's medical needs on the part of Cuyler or Robinson. Instead, as in *Estelle, supra*, it appears that these supervisory officials are named "more on respondeat superior principles in line with their official capacities." 554 F.2d at 654. The allegations therefore fail to state a claim.

■ In responding to the motion to dismiss, plaintiff filed certain documents, including a letter to Superintendent Cuyler and an exchange of correspondence with Commissioner Robinson. These documents convert the motion to dismiss into one for summary judgment. *See* Fed.R.Civ.P. 12(b). The documents do not aid plaintiff's case, however. In the letter to Cuyler plaintiff states—

"When I saw the eye specialist, for the first time, he told me that they were going to send me outside because the problem with my eye required an operation, and that they didnt [*sic*] have the facilities here at the prison, and so he agreed (I do not recall the doctors [*sic*] name) to make all necessary arrangements to see that I get the operation so that I wouldnt [*sic*] loose [*sic*] my eye. Any-how sometime [*sic*] passed by, and the doctor called me for the second time, instead this time he told me that they couldnt [*sic*] send me out-side, as he had previously agreed, because there was nothing they could do for me."

Plaintiff's own letter therefore demonstrates that plaintiff was not forbidden eye treatment at Wills Eye Hospital but merely that the recommendation of surgery was changed because it was decided that the surgery wouldn't be helpful. None of the documents provides any inference of deliberate indifference to plaintiff's needs on the part of Cuyler or Robinson. Indeed, one of the documents is a letter to plaintiff from Robinson which shows that he gave plaintiff's case his *personal attention* and was satisfied that it would adequately be taken care of by medical personnel. There are no facts anywhere in the record that create a material issue of fact on this matter, and, therefore, in light of the record provided by plaintiff, defendants are entitled to summary judgment.

■ One final matter deserves attention. In the complaint, plaintiff asserts a claim of denial of his equal protection rights.[3] Defendants have not addressed this claim in the brief accompanying their motion. From the face of the complaint, even when read in conjunction with the brief and documents filed by plaintiff in opposition to the motion to dismiss, I can perceive no basis for an equal protection claim. Apparently, plaintiff is unhappy with the lack of Spanish-speaking personnel at the prison hospital. The fact that the

3. Parts VII, VIII, and IX of the complaint read as follows:

"VII. SECOND CAUSE OF ACTION

15. Defendants and their agents by refusing plaintiff's request for adequate or reasonable medical treatment, denied plaintiff Equal Protection of the Laws secured to him under the Fourteenth Amendment to the United States Constitution.

VIII. THIRD CAUSE OF ACTION

16. That defendants and others, arbitrary and capriciously denied to assist the 53 year old plaintiff, from inception at the institution through the further denial of Spanish speaking personnel at the hospital, does contribute to the denial of equal treatment.

IX. FOURTH CAUSE OF ACTION

17. That defendants acted maliciously, arbitrary and racially motivated 'gross negligence' in assisting plaintiff of Spanish speaking origin with medical assistance is wantonly, with willful intent and disregard, as is the practice at Graterford Institution to treat members of the Puerto Rican Nationality."

368

hospital lacks such personnel, however, in no way supports an allegation that defendants are intentionally discriminating against plaintiff because of his Hispanic origin. Nor does plaintiff's allegedly inadequate medical care show class-based discrimination. Even *pro se* actions by prisoners require "some semblance of factual specificity." *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970); *see Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922–23 (3d Cir. 1976); *Gray v. Creamer*, 465 F.2d 179, 182 n.2 (3d Cir. 1972); *Negrich v. Hohn*, 379 F.2d 213 (3d Cir. 1967); *cf. Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978). There are no facts showing discrimination in this case. In short, therefore, even reading the complaint with all the liberality due *pro se* pleadings, I conclude that plaintiff has not stated a claim for denial of equal protection rights.

The motion of defendants Cuyler and Robinson, treated as a motion for summary judgment, will be granted with leave, however, to file an amended complaint. *Cf. Rotolo, supra*, 532 F.2d at 923.