BECKER, Circuit Judge,
dissenting.
I agree with the majority that the District Court erred in excluding Thomas’s contested exhibits. I disagree, however, that the error was harmless, and I would therefore reverse and remand for a new trial.
I.
Judge Van Antwerpen’s Opinion of the Court quite lightly concludes that it was error for the District Court to exclude Thomas’s proffered exhibits as irrelevant, and that “to reach a contrary conclusion would seem almost impossible.” Ante at -. The low threshold for relevance under Rule 401, and the plain connection between the grievances and Thomas’s legal claims, compels this conclusion. I would add that the District Court’s statements that the disputed documents were “self-serving,” and “merely a recitation by Mr. Thomas of the events,” provided no reason to find them irrelevant under Rule 401. The fact that a document is self-serving may provide some reason for a jury to discount its probative value, but it surely does not destroy “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Fed. R.Evid. 401.
*40 II.
I part company with the majority, however, when it concludes that the District Court’s error was harmless. To provide context for my conclusions, I will first briefly describe the relevant contested exhibits and the responses thereto.
Exhibits 16-18, from mid-to-late October 1997, memorialize Thomas’s complaints that his right side hurt, and that a physician’s assistant kept giving him contraindicated medication (Tylenol and similar painkillers). Cerullo replied to Exhibit 16, “You were seen at sick call today and resolved your own problem.”
Exhibits 19, 21, and 22 are similar to Exhibit 20, which the District Court did allow into evidence. In each of these grievances (from later in October), Thomas complained that the physician’s assistant refused to treat him for pain in his right side, and that he prescribed contraindicated Tylenol. Cerullo replied to Exhibit 21 that Thomas should discuss these issues with the doctor. In Exhibit 23, dated November 11, Thomas replied that he had seen the doctor and would like to meet with Cerullo. This meeting does not seem to have occurred.
Exhibits 25, 26, and 29, from mid-November 1997, constitute an odd sideshow to this case: Thomas repeatedly complains about an apparent clerical error that led Cerullo to believe that he stayed overnight at the infirmary. As far as we can tell, the question whether Thomas stayed overnight was of no importance. Administrators told Thomas that it was an honest mistake, but he took it extremely seriously, alleging that the staff’s mistake constituted criminal “tampering with public records.”
Exhibits 31 and 32, which were excluded from any use at trial (including impeachment), come from early December of 1997. They are Thomas’s responses to Dragovich’s November 25 letter, which was admitted into evidence as Exhibit 30. In Exhibit 30, Dragovich stated that, because Thomas “formerly had hepatitis,” short-term use of Tylenol in small doses might be permissible under the direction of a doctor or physician’s assistant. Thomas replied that hepatitis is incurable, so he did not “formerly” have it, and that he had been prescribed contraindicated medicines for fourteen months, which he did not consider to be short-term.
Exhibit 33, also excluded entirely, was a general complaint to Cerullo: “Miss Cerullo: Why do you want me to ke[ep] sig[n]ing up for sick call, when you and your staff [k]no[w] what the problem is[?] Miss Cerullo I am 1 of the 26,000 inmates. So why aren’t I getting the proper treatment. Read this!” Cerullo’s entire response, at the bottom of the form, is “Mr. Thomas — Thanks for the info.”
Finally, Exhibits 34 — 35 concern an episode in which Thomas went to a dentist, who wanted to pull his tooth but could not do so for ten days because of staff shortages. The dentist prescribed him Motrin for the pain; Motrin is contraindicated for hepatitis. Cerullo’s rather brusque response to Thomas’s complaints, at the bottom of Exhibit 35, includes the sentence “If you don’t want the Motrin don’t take it.”
Taken together, these exhibits tend to establish a number of propositions. First, they suggest that Thomas was constantly and repeatedly given contraindicated medications. These medications were not prescribed by the prison doctor, who had apparently told him that they were contraindicated; rather, they were prescribed by the physician’s assistant or by the dentist.
Second, they suggest that Thomas’s complaints of pain were sometimes ignored or treated cavalierly by medical staff. *41 When Thomas went to the physician’s assistant with a complaint of pain in his right side, the physician’s assistant once (allegedly) sent him away without treatment or an explanation. When his tooth needed to be pulled, he was left to languish for ten days with no treatment except a painkiller that could have aggravated his hepatitis.
Third, and most importantly, they demonstrate that Cerullo (and, to a lesser extent, Dragovich) was aware of these problems. A jury might be able to infer, from the defendants’ responses on the grievance forms and from Thomas’s continued complaining, that Cerullo and Dragovich did not take Thomas’s concerns very seriously.
III.
“A determination of harmless error depends on whether ‘it is highly probable that the error did not contribute to the judgment.’ ” Advanced Med., Inc. v. Arden Med. Sys., Inc., 955 F.2d 188, 199 (3d Cir.1992) (citing McQueeney v. Wilmington Trust Co., 779 F.2d 916, 924 (3d Cir. 1985)). This is a “rigorous” test. Id. at 200.
The majority correctly summarizes the jurisprudence of deliberate indifference. Mere medical malpractice is not an Eighth Amendment violation. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999). But knowledge of and indifference to “an excessive risk to inmate health or safety” is such a violation. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This two-part standard “requires deliberate indifference on the part of the prison officials and it requires the prisoner’s medical needs to be serious.” Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.1987) (quoting West v. Keve, 571 F.2d 158, 161 (3d Cir.1978)).
There is no doubt that Thomas had a serious medical condition: hepatitis C can have severe and even fatal consequences. Furthermore, a jury could find that the neglect and mistreatment that he alleges in his grievances were similarly serious. While the parties have not directed our attention to any discussion of the dangers of Tylenol and other contraindicated medications to hepatitis patients, Thomas’s allegations about them stand unrefuted in the record, and it stands to reason that someone with a serious liver disease like hepatitis should not be prescribed contraindicated liver-damaging medications.
The other prong of the test, requiring that defendant prison officials be deliberately indifferent to the inmate’s needs, is difficult to meet when the defendants are not the medical personnel who treated the prisoner.[2] In Durmer v. O’Carroll, 991 F.2d 64, 69 (3d Cir.1993), we affirmed summary judgment in favor of a warden and corrections commissioner on the basis that “[njeither of these defendants ... is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.” We clarified that decision last year, writing:
If a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.... Accordingly, we conclude that, absent a reason to believe (or actu *42 al knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.
Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004).
These cases, and particularly Durmer’s sweeping language, provide prison officials with broad discretion to leave prisoners in the hands of medical personnel. But, as Spruill recognizes, that discretion is not absolute: if the officials have reason to believe that medical personnel are mistreating or not treating the prisoner, they may not simply turn a blind eye to the problem. Instead, Spruill suggests some duty to investigate evidence of misfeasance or nonfeasance by medical personnel. Indeed, it is difficult to think of clearer reasons to suspect misfeasance or nonfeasance than the actual contemporaneous complaints of the prisoner. When Thomas wrote that “the assistant physician Rush refuse to treat me” (Exh. 19), Cerullo had reason to believe that the physician’s assistant was not treating him. When Thomas wrote that “I have been taking [Tylenol] for Ik months NOT short term, Miss Cerullo said that long term [use] could affect you. But it would be contraindicated or inadvisable” (Exh. 31, emphasis in original), Dragovich had reason to believe that the medical staff was mistreating him. Both of these complaints, and many others like them, were excluded from use as evidence at trial.
Thomas presented significant expert evidence about the proper treatment for hepatitis, but his only evidence of the defendants’ alleged neglect was his own testimony. The grievances at issue here would have provided substantially more cogent, detailed, and credible evidence of Thomas’s troubles and the defendants’ alleged failure to act on them. Read charitably, they might establish in a jury’s mind “reason to believe ... that prison doctors or their assistants are mistreating (or not treating) a prisoner,” Spruill, 372 F.3d at 236, and might thus convince the jury that the defendants were deliberately indifferent. I am not sure that this result is likely, but I cannot conclude that it is “highly probable” that such evidence would have no effect on the verdict.
IV.
The majority finds two reasons that the District Court’s error was harmless. First, it discusses the medical evidence regarding the standard of care for hepatitis. It notes that the prison doctor put Thomas on a special diet and monitored his blood tests for hepatitis symptoms, but did not actively treat his hepatitis using Interferon, which was available at the time. I do not gainsay that this course of conduct, although perhaps not state of the art, was constitutionally adequate. While Thomas’s expert witness, a prominent gastroenterologist, testified that Interferon was standard treatment for hepatitis in 1997 and 1998, the defendants produced evidence that it was not even approved by the FDA at that time, and that the prison’s doctor (an outside contractor) gave his private-practice patients the same hepatitis treatment that he gave Thomas. I think that any reasonable jury would find that the course of treatment given to Thomas was adequate.
But the contested grievances, and Thomas’s lawsuit, are not solely about the course of treatment prescribed by the prison doctor. Indeed, the doctor is not even a defendant here. Instead, Thomas’s suit is about the cavalier treatment that he claims to have received at the hands of prison medical staff (particularly the physician’s assistant responsible for most of his day- *43 to-day treatment), and the defendants’ failure to do anything to fix this problem. As Thomas’s attorney put it in his closing argument: “The issue in this case ... is not about second guessing medical decisions .... You don’t even get to second guess treatment decisions when you have a refusal to treat in the first place.”
The staffs alleged unconcern about Thomas’s complaints did more than offend his dignity; it also had possible medical consequences. Thomas was given Tylenol and other painkillers by several medical staff members — though not, it seems, by the supervising doctor — which might have aggravated his hepatitis. The majority states that “it was ... undisputed that Thomas was advised that these medications were contraindicated for persons with hepatitis and thus were only for short-term use.” Ante at-. Certainly Thomas was informed that long-term use of painkillers was dangerous, but I am not sure that the majority has correctly characterized the painkiller issue. It seems to me that, while the doctor (and Thomas) was aware that Tylenol was contraindicated for Thomas’s condition, medical personnel nonetheless gave him Tylenol on a frequent basis for fourteen months, with no understanding or further warnings about its possible dangers.
Additionally, complaints of pain were occasionally ignored. A painful tooth was not pulled, and Thomas’s pain was treated only via contraindicated Motrin. These decisions may have caused Thomas needless pain, or permanent liver damage; they certainly seem to have increased his fear and anxiety about living with a serious illness. Thomas’s grievances, if admitted into evidence, might have convinced a jury that Thomas was not given adequate medical care, even if that jury believed (as I do) that the decision not to prescribe Interferon was itself proper.
The majority next states that “Thomas’ contested exhibits provided Thomas no net gain in evidentiary value: for every contested exhibit containing evidence tending to support Thomas’ theory of liability, another one of his exhibits tended to undercut it.” Ante at-. This cannot be the proper legal standard: the fact that some of the excluded evidence might have helped the defendants does not render it “highly probable” that, in the aggregate, it would not have helped the plaintiff. Juries can pick and choose, and often do.
At all events, I am not convinced by the majority’s claim that these exhibits would have provided no net gain. Perhaps they “confirm that Cerullo had a belief that Thomas was under the care of the prison doctor and medical staff,” ante at-- -, but, as I have explained above, that does not completely immunize Cerullo (or Dragovich) from Eighth Amendment liability. And I disagree with the majority that the “contested exhibits provide no new support” for the deliberate indifference claim. Rather, they are a litany of complaints from Thomas that “prison doctors or their assistants [were] mistreating (or not treating) him,” Spruill, 372 F.3d at 236, with occasional offhand replies from Cerullo that might be read as indicating indifference and, indeed, callousness. This is exactly the sort of evidence that can establish deliberate indifference, and without being allowed to offer it, Thomas’s ability to present his case was severely curtailed.
For the reasons given above, I cannot conclude that it is “highly probable” that the District Court’s error in excluding Thomas’s grievances did not contribute to the jury’s verdict in this case. I therefore respectfully dissent.

. I note that Cerullo is a medical officer: she was the Health Care Administrator at SCI— Mahanoy at the relevant times, and was trained as a nurse. While her duties did not include treating patients, she was admittedly responsible for supervising the medical staff and outside medical vendors, although her supervision seems to have involved mainly administrative issues rather than treatment decisions.