**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3989
_____

DONALD D. PARKELL,
Appellant

v.

JACK A. MARKELL, Governor of Delaware, in his official and individual capacities;
ATTORNEY GENERAL BEAU BIDEN, For Delaware, in his official and individual
capacities; ROBERT COUPE, Commissioner of the Delaware Department of
Corrections, in his official and individual capacities; PHILLIP MORGAN, Warden of the
Howard R. Young Correctional Institution, in his official and individual capacities;
MARY MATTHEWS, Lieutenant at Howard R. Young Correctional Institution, in her
official and individual capacities

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-14-cv-00601)
District Judge: Honorable Sue L. Robinson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 6, 2015

Before: GREENAWAY, JR., SCIRICA, and RENDELL, Circuit Judges

(Opinion filed: July 27, 2015)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Appellant Donald Parkell, pro se and in forma pauperis, appeals from an order of the District Court dismissing his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). For the following reasons, we will affirm in part and vacate in part the District Court's judgment and remand this case for further proceedings consistent with this opinion.

Parkell is a Delaware state prisoner. In May 2014, he sued Appellees—Delaware Governor Jack Markell, former Attorney General Beau Biden, Department of Corrections Commissioner Robert Coupe, Howard R. Young Correctional Institution ("HRYCI") Warden Phillip Morgan, and Mary Matthews, an HRYCI officer who allegedly supervised the office of prisoner grievances—for injunctive, declaratory, and monetary relief under 42 U.S.C. § 1983 for allegedly violating his Eighth and Fourteenth Amendment rights.

According to Parkell's complaint, he was held in west-side housing at HRYCI for about two years. The west side at HRYCI was overcrowded, housing three men per cell designed for one. HRYCI allegedly provided the prisoners with: fewer servings of food and razors than prisoners; insufficient telephones and shower stalls; insufficient underclothing which the prisoners could not self-launder, leading to its theft when placed in the single, communal laundry tub; and only a small, indoor concrete enclosure where all 59 men per unit had to exercise simultaneously if they wished to exercise at all.

According to Parkell, HRYCI punished its most violent and transgressive inmates by assignment to the west side, which also housed pretrial detainees and nonviolent

offenders. Inmates there were housed together regardless of status, without any risk assessment. The more aggressive individuals and gangs used force and intimidation to seize the limited resources at the expense of weaker and older inmates. Correctional officers did not personally participate in and could not observe the distribution of resources. Emergency alerts requiring guard intervention frequently occurred.

Parkell was injured in October 2013 shortly after he allegedly spoke up in defense of the weaker prisoners to gang members in his unit and also complained of conditions to some correctional "lieutenants." When he attempted to fairly distribute juice portions at one mealtime, multiple prisoners attacked and beat him for approximately five minutes. He sustained head wounds, broken ribs, and two collapsed lungs. Parkell was treated at Christiana Hospital, where medical professionals prescribed oxycodone to combat his pain during his recuperation. HRYCI, however, refused to provide that medication under a policy forbidding medicinal use of narcotics. The prison provided Parkell instead with Tylenol containing codeine at less frequent intervals, and then discontinued that treatment after a few days in favor of an anti-psychotic/anti-depressant drug. As a result, Parkell claimed, he suffered intense pain for more than two weeks.

In his complaint, Parkell appeared to advance Eighth and Fourteenth Amendment claims based on his treatment as a pretrial detainee and then a convicted inmate. The District Court dismissed Parkell's complaint with prejudice upon screening it under § 1915(e)(2)(B), holding that some of Parkell's claims duplicated those the court had already dismissed in another of his suits, see Parkell v. Morgan, 917 F. Supp. 2d 328 (D.

3

Del. 2013), and that the remainder were frivolous. See 28 U.S.C. § 1915(e)(2)(B)(i).

Parkell timely appealed.[1]

We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review of the District Court's dismissal of Parkell's complaint under § 1915(e)(2)(B). See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). A court must dismiss an in forma pauperis action that is frivolous or malicious, or fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(i)–(ii). A complaint is frivolous where it lacks an arguable basis in either law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The standard for failing to state a claim under § 1915(e)(2)(B)(ii) is the same as that under Fed. R. Civ. P. 12(b)(6). See Allah, 229 F.3d at 223. To pass muster under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[2] This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

---

[1] Parkell does not appeal the dismissal of his claims against Matthews and, on appeal, indicates that he no longer seeks injunctive relief.

[2] We acknowledge Parkell's argument that his complaint should have been deemed sufficient "unless it appears beyond doubt that [he] can prove no set of facts in support of his claim that would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45–46 (1957). Twombly, however, rejected this standard to require factual allegations showing a plausible entitlement to relief. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–33 (3d Cir. 2008).

4

A district court must permit a plaintiff to amend claims that are dismissed for failure to state a claim under § 1915(e)(2)(B)(ii) unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 106 (3d Cir. 2002). Amendment is futile where the complaint as amended would still fail to state a claim for relief. In re Merck & Co., Inc. Sec., Derivative & ERISA Litig., 493 F.3d 393, 400 (3d Cir. 2007) (citation omitted). We liberally construe Parkell's pro se complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### Failure to Protect

As the District Court noted, several of Parkell's claims of insufficient amenities and other deprivations—including showers, shaving opportunities and razors, clothes and laundering, telephones, exercise space, food portions, overcrowded cells, inadequate guard staffing, and mixed pretrial and post-conviction housing—duplicated those already dismissed in Parkell v. Morgan under the at-least-equally protective standard for pretrial detainees. See Bell v. Wolfish, 441 U.S. 520, 545 (1979).[3] The District Court therefore properly dismissed these claims under § 1915(e)(2)(B)(i). See Deutsch v. United States, 67 F.3d 1080, 1086–87 (3d Cir. 1995).

---

[3] While Parkell alleged that pretrial detainees also suffered constitutional deprivations as a result of these conditions, he clarifies on appeal that he was a convicted inmate, not a pretrial detainee, during the time relevant to his complaint. Therefore, we need not consider whether his allegations state such a Fourteenth Amendment claim. See Bell, 441 U.S. at 545.

5

However, Parkell argues on appeal that he is not in this case reasserting a conditions-of-confinement claim.[4]  Rather, Parkell maintains that he alleged certain conditions at HYRCI to show the prison's role in causing the injury he suffered.  Parkell acknowledges that some of his allegations duplicated those in Parkell v. Morgan, but points out the attack and its aftermath, which are the primary focus of this case, did not occur until after his conditions-of-confinement claims in the first case were dismissed.  Parkell correctly observes that the District Court did not consider whether his allegations in this case supported a failure-to-protect claim.

While the Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners," not every prisoner-inflicted injury amounts to a constitutional violation.  Farmer v. Brennan, 511 U.S. 825, 833–34 (1994).  To state a failure-to-protect claim, a prisoner "must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm."  Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (citing Farmer, 511 U.S. at 834).  An official acts with deliberate indifference when he or she knows of and disregards a substantial risk of serious harm to inmate health or safety.  Farmer, 511 U.S. at 837.  It does not matter "whether a prisoner

_____

[4] Inconsistently, Parkell at one point states that some of the conditions he described amounted to constitutional violations on their own.  Regardless, the District Court did not err in holding that the conditions alleged, considered individually, did not rise to the level of Eighth Amendment violations.

faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Id. at 843.

Assuming the truth of Parkell's factual allegations and construing them liberally, they suggest that overcrowding and insufficient provisions led to violent competition among inmates, creating a substantial risk that an inmate might be seriously harmed, such as Parkell eventually was, in a fight over provisions. See id. at 834; Bistrian, 696 F.3d at 367. As for deliberate indifference, Parkell alleged that he complained of the dangerous conditions to HRYCI "lieutenants." He also claimed that the officer on duty the day of his attack either was absent from his post or otherwise failed to intervene for approximately five minutes as Parkell was beaten. However, Parkell did not sue these guards, but only managerial and policy-making officials.

To establish that a supervisor was deliberately indifferent, Parkell must identify a specific policy or practice that the supervising official failed to employ and show that the existing policy or procedure created an unreasonable risk of a constitutional violation, that the official was aware of but indifferent to the risk, and that the policy or procedure caused constitutional injury. See Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)). We have held that these elements are met where the supervisor "failed to respond appropriately in the face of an awareness of a pattern of such injuries" or where "the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory

7

officials to respond will alone support" a finding of deliberate indifference. Sample, 885 F.2d at 1118.

We cannot infer from Parkell's allegations, even construed liberally, that Markell or Biden—even if they allegedly failed to build more prison space or pursue institutional reform—either played a role in determining the prison conditions creating the risk of his injury, or were aware of that risk. See Beers-Capitol, 256 F.3d at 134. While the case against Morgan and Coupe is closer, Parkell's allegations are too conclusory to support an inference of deliberate indifference. See Iqbal, 556 U.S. at 678. Parkell does not indicate, for example, how frequently fights over provisions occurred prior to his, how many had resulted in serious injury, and what prison guards' actual response—outside of sounding an emergency alert—to such fighting consisted of. His complaint therefore does not plausibly suggest that the type of violent dispute causing his injury was so pervasive, injurious, and predictable, and guards' typical responses so ineffectual, that Morgan and Coupe *must have been aware* of a problem merely by virtue of their institutional roles. See Sample, 885 F.2d at 1118.[5]

However, Parkell's allegations as to Morgan and Coupe are not so implausible as to be factually or legally frivolous. See Neitzke, 490 U.S. at 325. He conceivably could

---

[5] Parkell also claimed that Morgan and Coupe failed to properly train their subordinate officers, leading to the constitutional deprivations he alleges. See Connick v. Thompson, 131 S. Ct. 1350, 1359–60 (2011). This theory, typically used to hold municipalities liable under § 1983, see id., does little to assist Parkell. He still must show the prison officials' personal involvement in the unconstitutional conduct to hold them liable for damages. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

address their deficiencies so as to nudge his failure-to-protect claim over the line into plausibility. See In re Merck & Co., 493 F.3d at 400. The District Court erred in denying Parkell an opportunity to amend his complaint and flesh out his claim against Morgan and Coupe. See Grayson, 293 F.3d at 106.

**Denial of Medical Care**

The District Court also dismissed as frivolous Parkell's claim that HRYCI officials unconstitutionally denied him adequate medical care during the period following his emergency surgery. Denial of medical care violates the Eighth Amendment where a prison official is deliberately indifferent to a prisoner's serious medical need. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Such deliberate indifference can occur where a prison official "knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "prevents a prisoner from receiving needed or recommended medical treatment." Id. Neither "mere allegations of malpractice" nor a prisoner's disagreement with prison medical professionals as to the proper method of treatment rises to the level of an Eighth Amendment violation. See Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted).

Parkell alleged that Morgan and Coupe[6] "enacted or maintained" an anti-narcotics policy that prevented him from receiving medication of the strength, frequency, and

---

[6] Parkell did not implicate any other Appellees in his denial of medical care claim.

duration "ordered for his recovery" at Christiana Hospital. The District Court reasoned that Parkell's claim failed because he had simply alleged a disagreement with HRYCI personnel over choice of medication. See id. However, construed liberally, Parkell's complaint did not describe a scenario where HRYCI personnel pursued a course first and foremost aimed at fully treating Parkell's symptoms, and Parkell or another doctor merely preferred different treatment. Rather, Parkell alleged that his initial medical source prescribed a certain medication that HRYCI was prevented from providing—or replacing with an alternative of comparable strength—by an administrative policy potentially grounded in a nonmedical rationale. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Assuming oxycodone was, in fact, necessary, HRYCI may have provided Parkell with not merely alternative, but qualitatively inferior and inadequate, medical care. See Rouse, 182 F.3d at 197; West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978) (holding that an unconstitutional denial of medical care occurred where deliberate indifference by prison officials "caused an easier and less efficacious treatment to be provided").[7]

However, Parkell's complaint does not indicate whether a physician at Christiana Hospital prescribed oxycodone for an extended period which included his return to HYCRI. If that were the case, the HRYCI policy might have prevented the receipt of

_____

[7] Whether Appellees can point to a legitimate penological reason for the medication policy to sufficiently justify its impact on Parkell's medical care, see Turner v. Safley, 482 U.S. 78, 89 (1987), is not before us at this juncture, with Appellees having yet to

"needed or recommended medical treatment."  See Rouse, 182 F.3d at 197.  Absent such detail, Parkell's allegations are equally consistent with lawful and unconstitutional behavior, and therefore insufficient to state a plausible claim.  See Twombly, 550 U.S. at 567–68.  Moreover, he has not plausibly alleged deliberate indifference.  See Rouse, 182 F.3d at 197.  He does not indicate that Morgan or Coupe either knew of prisoner suffering caused by the anti-narcotics policy, or that such suffering was so pervasive or well-documented that the officials must have known of it.  See Beers-Capitol, 256 F.3d at 134.

While Parkell's denial-of-medical-care claim is not so ungrounded as to be frivolous, see Neitzke, 490 U.S. at 325, it falls short of stating a plausible Eighth Amendment claim.  See Iqbal, 556 U.S. at 678.  However, because amendment could possibly produce a viable claim against Morgan and Coupe, the District Court erred in dismissing this claim with prejudice.  See Grayson, 293 F.3d at 106.

**Substantive Due Process**

Parkell also claimed that the prison conditions and the denial of his grievances concerning them constituted Fourteenth Amendment violations.  His sparse allegations on point did not indicate his legal theory, and the District Court appears to have interpreted them to allege that he was impermissibly subjected to punishment while still a pretrial detainee.  However, on appeal, Parkell argues that he was alleging substantive due process violations.  Because he challenges executive action, his allegations must indicate that (1) officials "have been deliberately indifferent to a liberty interest" and (2)

---

receive and answer the complaint.

their behavior in depriving that interest was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" See Leamer v. Fauver, 288 F.3d 532, 546–47 (3d Cir. 2002) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

Parkell had no constitutionally protected liberty interest in receiving a particular result through the prison grievance process. See Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001). As for Parkell's allegations concerning prison conditions, his injury, and his medical treatment, they are properly analyzed under the specific constitutional protections for convicted prisoners. See Albright v. Oliver, 510 U.S. 266, 273 (1994). The District Court therefore properly dismissed this claim, albeit for other reasons.

Based on the foregoing, we will vacate the dismissal of Parkell's failure-to-protect and denial-of-medical-care claims against Morgan and Coupe, and affirm the District Court's judgment as to all remaining claims against all parties. We will remand for further proceedings consistent with this opinion.